**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**FRESNO DIVISION**

| | |
|---|---|
| E.H. and V.P., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LIFELONG ADOPTIONS, INC.,<br><br>Defendant. | Case No. 1:25-cv-00441-JLT-BAM<br><br>**DEFENDANT'S 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**<br><br>Hon. Judge Jennifer L. Thurston<br>Magistrate Barbara A. McAuliffe |

Luke K. Chamberlain (SBN 358896)
MESSER STRICKLER BURNETTE, LTD.
142 W. Station Street
Barrington, IL 60010
Telephone: (312) 334-3469
lchamberlain@messerstrickler.com

*Counsel for Defendant –*
*LifeLong Adoptions, Inc.*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ 3
INTRODUCTION ........ 8
FACTS ........ 9
STANDARD ........ 11
ARGUMENT ........ 12
I. STATUTES OF LIMITATION BAR MAJORITY OF V.P.'S CLAIMS. ........ 12
II. THE INTRUSION UPON SECLUSION AND CONSTITUTIONAL PRIVACY CLAIMS FAIL FOR LACK OF INTRUSION. ........ 15
III. PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO SUPPORT A CLAIM FOR BREACH OF FIDUCIARY DUTY. ........ 16
IV. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A CLAIM FOR BREACH OF CONFIDENCE. ........ 20
V. DUTY, DAMAGES, AND CAUSATION NOT PLAUSIBLY ALLEGED TO SUPPORT NEGLIGENCE CLAIM. ........ 25
VI. IMPLIED CONTRACT ALLEGATIONS FAIL. ........ 27
VII. UNJUST ENRICHMENT ALLEGATIONS FAIL. ........ 30
VIII. ALLEGATIONS DEFEAT ECPA CLAIM. ........ 31
IX. UCL CLAIM FAILS FOR LACK OF STATUTORY STANDING. ........ 36
X. ALLEGATIONS DO NOT PLAUSIBLY SUPPORT WESCA CLAIM. ........ 40
XI. UTPCPL FAILS FOR LACK OF JUSTIFIABLE RELIANCE AND DAMAGES. 42
XII. CIPA CLAIM FAILS FOR SAME REASONS AS ECPA CLAIM. ........ 44
CONCLUSION ........ 45

## TABLE OF AUTHORITIES

### CASES


*1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568 (2003).......................... 15

2024 U.S. Dist. LEXIS 101754 (C.D. Cal. June 5, 2024).................................... 36

*Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011).......................... 16

*Arnold v. Corecivic of Tenn.*, 2021 U.S. Dist. LEXIS 2868 (S.D. Cal. Jan. 6, 2021) ............................................................................................................ 30

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................... 9, 17

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019)........................... 37

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................. 10, 17, 23

*Benjamin v. Walt Disney Co.*, 2007 U.S. Dist. LEXIS 91710 (C.D. Cal. June 5, 2007)................................................................................................ 11

*Brodsky v. Apple Inc.*, 2019 U.S. Dist. LEXIS 148808, *15 (N.D. Cal. Aug. 30, 2019)........................................................................................................ 44, 45

*California Medical Assn. v. Aetna Health of California Inc.*, 14 Cal. 5th 1075 (2023).................................................................................................. 34

*Campbell v. Facebook*, 77 F. Supp. 3d 836 (N.D. Cal. 2014).............................. 35

*Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sept. 14, 2016)........................................................................................... 23, 25

*Chitkin v. Lincoln Nat'l Ins. Co.*, 879 F. Supp. 841 (S.D. Cal. 1995).................... 28

*Cleveland v. Johnson*, 209 Cal. App. 4th 1315 (2012) .......... 15

*Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197 (1983) .......... 15

*Commonwealth v. Byrd*, 661 Pa. 85 (2020) .......... 39

*Doe v. Kaiser Foundation Health Plan, Inc.*, 2024 U.S. Dist. LEXIS 66733 (N.D. Cal. Apr. 11, 2024) .......... 31

*Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) .......... passim

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211 (9th Cir. 1997) .......... 19, 22

*Fayer v. Vaughn*, 649 F.3d 1061 (9th Cir. 2011) .......... 30

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005) .......... 12

*Giles v. GMAC*, 494 F.3d 865 (9th Cir. 2007) .......... 16

*Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......... 35

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) .......... 13

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994) .......... 13

*Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008) .......... 40

*In re Facebook Privacy Litig.*, 791 F. Supp. 3d 705 (N.D. Cal. 2011) .......... 35

*In re Google, Inc. Gmail Litig.*, 2014 U.S. Dist. LEXIS 36957 (N.D. Cal. March 18, 2014) .......... 32

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 32

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012) ........ 24

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) ........ 33, 34

*Javier v. Assur. IQ LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 12

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) .. 29, 30, 35

*Klepac v. CTX Mortgage Co., LLC*, No. 2:11-cv-00752-GEB-GGH, 2012 U.S. Dist. LEXIS 25640 (E.D. Cal. Feb. 27, 2012) ........ 15, 17

*Lau v. Gen Digit, Inc.*, 2023 U.S. Dist. LEXIS 236720 (N.D. Cal. Sept. 13, 2023) 37

*Lau v. Gen. Digit. Inc.*, 2024 U.S. Dist. LEXIS 813210 (N.D. Cal. Apr. 3, 2024). 11

*Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672 (N.D. Cal. 2021) ........ 13

*Mar. v. Perkins*, 102 Cal. App. 5th 201 (2024) ........ 26

*Medoff v. Minka Lighting, LLC*, No. 2:22-cv-08885-SVW-PVC, 2023 U.S. Dist. LEXIS 81398 (C.D. Cal. May 8, 2023) ........ 24

*Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515 (2022) ........ 36, 38

*Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........ 31

*Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125 (9th Cir. 2022) ........ 30

*Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022) ........ 38

*Riggs v. MySpace, Inc.*, 444 F.App'x 986 (9th Cir. 2011) ........ 27

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004) ........ 27

*Rodriquez v. Google, LLC*, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) ........................................................................................................ 30

*Roe v. Amgen Inc.*, 2024 U.S. Dist. LEXIS 101754 (C.D. Cal. June 5, 2024) passim

*Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 U.S. Dist. LEXIS 83660 (C.D. Cal. Feb. 27, 2025)............................................................passim

*Sanchez v. Lending Tree, LLC*, 2010 U.S. Dist. LEXIS 108439 (S.D. Cal. Oct. 12, 2010)...................................................................................................... 23

*Scott v. Bluegreen Vacations Corp.*, 2018 U.S. Dist. LEXIS 198840 (E.D. Cal. Nov. 20, 2018) ............................................................................................... 27

*Sidorov v. Transamerica Life Ins. Co.*, 832 Fed. Appx. 479 (9th Cir. 2020) ......... 11

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ............................................ 9

*Starship, LLC v. Ghacham, Inc.*, 2023 U.S. Dist. LEXIS 156799 (C.D. Cal. July 17, 2023)...................................................................................................... 26

*Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331 (E.D. Pa. 2012) ............ 14

*Sussman v. ABC*, 186 F.3d 1200 (9th Cir. 1999) .................................................. 31

*Swafford v. IBM*, 383 F. Supp. 3d 916 (N.D. Cal. 2019)...................................... 28

*Tele-Count Engineers, Inc. v. Pacific Tel. & Tel. Co.*, 168 Cal. App. 3d 455 (1985) ....................................................................................................... 19

*Von Saher v. Norton Simon Museum of Art of Pasadena*, 592 F.3d 954 (9th Cir. 2010)...................................................................................................... 10

*Wolf v. Superior Court*, 107 Cal. App. 4th 25 (2003) .......................................... 16

*Worldvision Enterprises v. ABC*, 142 Cal. App. 3d 589 (1983) .......... 16

*Wu v. Sunrider Corp.*, 2018 U.S. Dist. LEXIS 227591 (C.D. Cal. May 22, 2018). 11

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479 (2004) .......... 40

**STATUTES**

18 Pa. C.S. § 5704(4) .......... 39

18 Pa. C.S. § 5725(a) .......... 38

18 U.S.C. § 2511 .......... 29

18 U.S.C. § 2511(2)(d) .......... 29

18 U.S.C. § 2520(e) .......... 11

73 Pa. C.S. § 201-9.2 .......... 41

Cal. Bus. & Prof. Code § 17204 .......... 34

Cal. Civ. Code § 1621 .......... 25

Cal. Civ. Proc. Code § 339(1) .......... 11

Defendant LifeLong Adoptions, Inc. ("LifeLong"), by and through its undersigned counsel, provides the following support for its Rule 12(b)(6) Motion to Dismiss the First Amended Complaint filed by Plaintiffs E.H. and V.P. (collectively, "Plaintiffs"):

## INTRODUCTION

Plaintiffs filed their initial complaint in this action on April 16, 2025 [ECF #1]. In response, on June 9, 2025, LifeLong filed a Rule 12(b)(6) Motion to Dismiss Plaintiffs' complaint in its entirety [ECF #13]. Subsequently, Plaintiffs filed a First Amended Complaint [ECF #19]. Despite having the benefit of LifeLong's arguments, Plaintiffs' Amended Complaint still fails to overcome the deficiencies LifeLong identified in its motion to dismiss that warranted dismissal of Plaintiffs' initial complaint.

Plaintiffs are two individuals who are proceeding anonymously. They have filed suit on their own behalf and on behalf of others similarly situated. According to Plaintiffs, LifeLong installed code from Google and Facebook on its website which allowed LifeLong to automatically share information with Google and Facebook relative to Plaintiffs' page views and link clicks. Plaintiffs have asserted a number of different causes of action against LifeLong, arising out of common law and state and federal statutes. By this motion, LifeLong challenges each of the claims brought against it.

## FACTS

The following alleged facts are stated as favorably to Plaintiffs as permitted by their First Amended Complaint [ECF #19]:

LifeLong is an adoption clinic which operates a website targeted to pregnant women. ECF #19 at ¶8. Plaintiffs visited LifeLong's website in May 2022 and November 2024, respectively, for purposes of seeking a consultation due to an unexpected pregnancy. *Id.* at ¶¶13, 18. Plaintiffs allege that due to Google and Facebook tracking "Pixels" LifeLong installed on its website, their "sensitive" personal information was impermissibly shared with Google and Facebook when they interacted with the website. *Id.* at ¶¶13-15, 18-20, 65. The specific sensitive, personal information Plaintiffs contend was impermissibly shared are website views and link clicks, such as when they clicked a link to initiate a call to LifeLong for consultation. *See id.* at ¶¶47, 65-72. Plaintiffs contend that Google and Facebook could track these webpage views and clicks to their specific accounts because they were logged into their Google and Facebook accounts when they accessed LifeLong's website. *Id.* at ¶¶15, 20, 53-56. Plaintiffs maintain that they did not consent to the "interception" of their information by Google or Facebook. *Id.* at ¶¶9, 14, 19. Plaintiffs also contend that LifeLong allowed the "interception" even though as of March 26, 2025, it claimed in its privacy policy that it did not share information. *Id.* at ¶74 n.48.

Plaintiffs contend that Pixel use is carried out as one piece of Google and

Facebook's vast, "monumental" surveillance empires pursuant to which Google and Facebook have long conducted "ubiquitous" tracking of internet usage by their users (which includes a majority of Americans). *Id.* at ¶¶9, 29-40, 57-58. Plaintiffs further contend that the reason website operators install Google and Facebook Pixels is because they can also be monetized by operators, who can utilize the data collected by the Pixels to improve their own marketing campaigns. *Id.* at ¶¶30, 34, 42, 46. For instance, Plaintiffs allege that LifeLong received access to advertising and marketing analytics services in exchange for installing Google and Facebook's Pixels on their website. *Id.* at ¶¶45, 84-85. Despite the vast use of Pixels, Plaintiffs contend in "many cases" website operators do not disclose the use and, even when it is disclosed, the disclosures are hidden or never read/viewed by the website users. *Id.* at ¶¶43-44.

Based on the above, as well as other allegations, Plaintiffs bring the following claims on behalf of a nationwide class and/or state-specific subclasses: (1) common law invasion of privacy – intrusion upon seclusion; (2) common law breach of confidence; (3) common law breach of fiduciary duty; (4) common law negligence; (5) breach of implied contract; (6) unjust enrichment; (7) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* ("ECPA"); (8) invasion of privacy under the California Constitution, Art. 1, § 1; (9) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); (10) violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Const. Stat. § 5702 *et seq.* ("WESCA"); (11) violation of the Pennsylvania

Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et seq.* ("UTPCPL"); and (12) California Invasion of Privacy Act, Cal. Penal Code § 631 ("CIPA").

## STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable legal theory. *See Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) ("Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory.").

To survive a motion to dismiss, a complaint must allege sufficient factual allegations which, taken as true, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

## ARGUMENT

The overarching theory of Plaintiffs' case, which grounds all of their claims, is that LifeLong collected their personal information relative to their interest in adoption and improperly disclosed it to Google and Facebook for monetary gain. As explained below, this theory of liability and the specific allegations pled do not sustain the claims alleged. As such, Plaintiffs' Complaint should be dismissed in its entirety.

### I. STATUTES OF LIMITATION BAR MAJORITY OF V.P.'S CLAIMS.

A claim may be dismissed under Rule 12(b)(6) as barred by the applicable statute of limitations when the running of the statute is apparent from the complaint. *See Von Saher v. Norton Simon Museum of Art of Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). Here, Plaintiff V.P. alleges that her information was shared in or around May 2022. *See* ECF #19 at ¶18. Her Complaint, however, was not filed until April 16, 2025, nearly three years later. Accordingly, the face of the complaint reveals that her privacy count (Count I), breach of confidence (Count II), negligence (Count IV), breach of implied contract (Count V), unjust enrichment (Count VI), and ECPA

(Count VII) claims are all outside the applicable statute of limitations.[1] *See Lau v. Gen. Digit. Inc.*, 2024 U.S. Dist. LEXIS 813210, *15 (N.D. Cal. Apr. 3, 2024) ("intrusion upon seclusion claims are subject to a two-year statute of limitations"); *Sidorov v. Transamerica Life Ins. Co.*, 832 Fed. Appx. 479, 482 (9th Cir. 2020) (negligence claims have two-year statute of limitations under California law); *Benjamin v. Walt Disney Co.*, 2007 U.S. Dist. LEXIS 91710, *20 (C.D. Cal. June 5, 2007) ("Under California law, claims for breach of an implied contract and breach of confidence are governed by two-year statutes of limitations.") (citing Cal. Cod. Civ. Proc. § 339(1)); *Wu v. Sunrider Corp.*, 2018 U.S. Dist. LEXIS 227591, *13 (C.D. Cal. May 22, 2018) ("Typically, unjust enrichment is based on a quasi-contract theory,[2] and is governed by the two-year limitations period for actions 'upon a contract, obligation or liability not founded upon an instrument of writing.'") (quoting Cal. Civ. Proc. Code § 339(1)); 18 U.S.C. § 2520(e) (two-year statute of limitations for ECPA claim).

V.P. will likely contend in response to the above that the discovery rule delayed accrual. In order to invoke the discovery rule for delayed accrual of a cause of action, however, "a plaintiff must plead facts to show that '(1) the time and manner

---

[1] Plaintiff alleges that the laws of the State of California apply. *See* ECF #19 at ¶27. Plaintiffs also cite diversity as the basis for the Court's jurisdiction. *See* ECF #19-1; ECF #19 at ¶23 (citing 28 U.S.C. § 1332(d)). "Generally, a federal court sitting in diversity applies the applicable statute of limitations of the jurisdiction in which the court sits." *Medez v. Ishikawajima-Harima Heavy Indus. Co.*, 52 F.3d 799, 800 (9th Cir. 1995). Thus, California statutes of limitation should apply to the common-law claims.

[2] As is the case with Plaintiffs' claim. *See* ECF #19 at ¶¶154-161.

of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Javier v. Assur. IQ LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)). More specifically, "a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury." *Fox*, 35 Cal. 4th at 808. And as such, a plaintiff seeking to invoke the delayed discovery rule "must plead that despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered the facts supporting the cause of action within the applicable statute of limitations period." *Id.* at 809.

Not only does V.P. fail to plead necessary facts to invoke the discovery rule, she pleads herself out of the rule by specifically alleging that "[a]fter providing her Sensitive Information to [LifeLong] through the Website, [she] ***immediately*** began seeing targeted online advertisements for adoption services, further ***confirming that her Sensitive Information had been shared with unauthorized third parties***." ECF #19 at ¶21 (emphasis added). In alleging as much, V.P. is deemed to have inquiry notice in or around May 2022, thereby defeating the discovery rule. *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 U.S. Dist. LEXIS 83660, *27 (C.D. Cal. Feb. 27, 2025) ("[E]ven assuming that Plaintiff did not have inquiry notice at the exact moment she visited the Website, she surely had inquiry notice when she began seeing ads."); *see also Javier*, 649 F. Supp. 3d at 901 (delayed discovery rule only delays accrual until plaintiff has or should have inquiry notice which occurs when

the plaintiff suspects or should suspect that her injury was caused by wrongdoing).

## II. THE INTRUSION UPON SECLUSION AND CONSTITUTIONAL PRIVACY CLAIMS FAIL FOR LACK OF INTRUSION.

To state a claim for intrusion upon seclusion under California law, a plaintiff must allege: (1) the defendant intentionally intruded into a place, conversation, or matter as to which plaintiff has a reasonable expectation of privacy; and (2) the intrusion was highly offensive to a reasonable person and sufficiently serious and unwarranted "to constitute an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286-87 (2009). "To state a claim for invasion of privacy under the California Constitution, a plaintiff must allege: (1) a specific, legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) a 'sufficiently serious' intrusion by the defendant." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 690 (N.D. Cal. 2021) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994)). Although the two claims are technically separate, the California Supreme Court has moved toward treating the tort and constitutional privacy inquiries as functionally identical. *Id.* Thus, when they are brought together they are subject to a "combined inquiry to determine" the nature of the intrusion and the offensiveness of the intrusion. *Id.*

Here, Plaintiffs allege that they and the putative class "communicated Sensitive Information that they intended for only [LifeLong] to receive and that they understood [LifeLong] would keep private and secure." ECF #19 at ¶122. Plaintiffs specifically allege that it is the "disclosure of the substance and nature of those

communications to third parties" which constitutes the alleged intrusion. *Id.* at ¶123. There can be no intrusion, however, into communications to which the defendant is a party. *See Saedi*, 2025 U.S. Dist. LEXIS 83660 at*16 (dismissing intrusion upon seclusion claim premised on materially identical allegations); *see also Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 342-43 (E.D. Pa. 2012) (voluntary disclosure of information to defendant precluded intrusion upon seclusion claim under Pennsylvania law, even where information is sold to third parties). The reasoning being that the *intrusion* itself forms the basis for an intrusion upon seclusion claim or constitutional privacy claim and there can be no intrusion if the defendant was intended to receive the communications, as is alleged here. *See e.g., Saedi*, 2025 U.S. Dist. LEXIS 83660 at *17, 20 ("Because one cannot logically intrude into communications to which they are a party, the Court finds Plaintiff failed to sufficiently plead a claim for intrusion upon seclusion."). In summary, as there can be no common-law tort or California constitutional privacy claim without an intrusion, and here there is none, Counts, I and VIII should be dismissed.

## III. PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO SUPPORT A CLAIM FOR BREACH OF FIDUCIARY DUTY.

Plaintiffs further contend that LifeLong's alleged conduct constitutes a breach of fiduciary duty. Specifically, Plaintiffs allege that Plaintiffs and LifeLong established a "special" (i.e., fiduciary) relationship "whereby [LifeLong] became guardian of Plaintiffs' and Class Members' Sensitive Information" and that "[LifeLong] became a fiduciary by its undertaking and guardianship of the Sensitive Information." ECF

#19 at ¶141. However, Plaintiffs fail to plausibly allege the threshold elements of a claim for breach of fiduciary duty.

In California, to state a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship; (2) the breach of that relationship; and (3) damage proximately caused thereby. *Klepac v. CTX Mortgage Co., LLC*, No. 2:11-cv-00752-GEB-GGH, 2012 U.S. Dist. LEXIS 25640, *21 (E.D. Cal. Feb. 27, 2012) (internal citations omitted). "Breach of fiduciary duty is a tort that by definition may be committed by only a limited class of persons." *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 592 (2003). "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 221 (1983). A party has a fiduciary obligation to another only when they are "duty bound to act with the utmost good faith for the benefit of the other party." *Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1338 (2012). "A fiduciary...assumes duties beyond those of mere fairness and honesty in marketing its product–he must undertake to act on behalf of the beneficiary, giving priority to the best interest of the beneficiary." *Id.* at 222. Critically, "[t]he mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty in the absence of an act creating or establishing a fiduciary relationship known to law." *Worldvision*

*Enterprises v. ABC*, 142 Cal. App. 3d 589, 595 (1983) (internal quotations omitted); *see also Giles v. GMAC*, 494 F.3d 865, 883 (9th Cir. 2007) (entering into an arms-length business relationship is insufficient to create a fiduciary duty even where plaintiffs entrusted a defendant with confidential information as part of the relationship); *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 157 (1st Cir. 2011) (rejecting contention that "a fiduciary relationship arises in the context of credit and debit card use because the customer trusts the merchant to safeguard her credit or debit card information").

Excluding contexts involving specifically protected medical or financial information, neither California nor 9th Circuit courts have ever determined that a fiduciary relationship exists between a website operator and its everyday users. Such a relationship is generally viewed through an ordinary contractual or commercial lens. As discussed *supra*, fiduciary duties are not imposed absent the existence of specific circumstances, such as explicit trust, reliance, or the creation of a special relationship between the parties. "Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal." *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 30 (2003). No such relationship or circumstances existed between Plaintiffs and Defendant.

Plaintiffs may counter that existence of a fiduciary relationship is a question of fact for the jury to determine. However, this cannot be the case when Plaintiffs'

allegations of a fiduciary relationship are plainly implausible. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("when allegations fail to raise the right to relief above the speculative level, dismissal is appropriate.") (internal quotations and citations omitted). "Plead[ing] facts that are merely consistent with...liability, [] is insufficient to overcome a motion to dismiss under Rule 12(b)(6)." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Indeed, Plaintiffs plead no facts to plausibly suggest that the relationship between themselves—everyday users of LifeLong's website—and LifeLong, an ordinary website operator, rises to the level of a fiduciary. LifeLong did not "knowingly undertake to act on behalf and for the benefit of" Plaintiffs. Nor did it "enter into a relationship which imposes that undertaking as a matter of law." Though Plaintiffs state matter-of-factly that "[LifeLong] has a fiduciary duty to act for the benefit of Plaintiffs and Class Members," this does not make it true. ECF #19 at ¶142. California law requires specific circumstances for the creation of a fiduciary relationship, and such circumstances are simply not present here.

Finally, a breach of fiduciary duty claim requires harm proximately caused by the alleged breach. *Klepac*, 2012 U.S. Dist. LEXIS at *21. Even if Plaintiffs could establish that LifeLong owed a fiduciary duty to them, Plaintiffs fail to plausibly allege that they have suffered damages proximately caused by LifeLong's breach of

that duty. Plaintiffs allege no concrete harm stemming from the LifeLong's purported use of the alleged Tracking Technologies. The information alleged to have been transmitted—browser configurations, feature interactions, or URLs of pages visited—is standard web analytics and not inherently sensitive or confidential. Moreover, Plaintiffs plead no facts to suggest that any person at all ever received or viewed the "Sensitive Information" that Plaintiffs contend was improperly disseminated. Plaintiffs fail to allege any concrete loss, injury, or detriment proximately caused by LifeLong's alleged dissemination of basic user activity data with Facebook and Google. Accordingly, any purported harm Plaintiffs are alleged to have suffered is vague, speculative, and insufficient to support a breach of fiduciary duty claim under California law.

Because Plaintiffs fail to plausibly allege a prima facie claim for breach of fiduciary duty, Count III must be dismissed.

## IV. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A CLAIM FOR BREACH OF CONFIDENCE.

Plaintiffs' Complaint likewise fails to allege a viable claim for breach of confidence. To sufficiently allege a breach of confidence claim under California law, a plaintiff must allege that "(1) the plaintiff conveyed confidential and novel information to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Ent. Rsch. Grp., Inc. v. Genesis*

*Creative Grp., Inc.*, 122 F.3d 1211, 1226-27 (9th Cir. 1997). The breach of confidence tort is based upon the "concept of an implied obligation or contract between the parties that confidential information will not be disclosed." *Id.* at 1226-27 (construing California law). Critically, the information disclosed "must be confidential and novel to warrant protection." *Tele-Count Engineers, Inc. v. Pacific Tel. & Tel. Co.*, 168 Cal. App. 3d 455, 462 (1985).

Plaintiffs' allegations fail to state a prima facie claim for breach of confidence. The central issue with Plaintiffs' breach of confidence claim is that the information alleged to have been transmitted by LifeLong is not confidential. The heart of Plaintiffs' Complaint is that LifeLong allegedly transmitted Plaintiffs' "Sensitive Information" to Google and Facebook via Tracking Technologies. However, merely describing certain information as "sensitive" does not make that information "confidential" as a matter of law. Section IV(A)(d) of Plaintiffs' Complaint contains Plaintiffs' core allegations regarding the specific "Sensitive Information" they allege LifeLong disclosed to Facebook and Google. The types of information alleged to be disclosed include the following examples: that Plaintiffs "visited a page titled 'Pregnant & Considering Adoption? Get Info'" and "submitted an application to receive further information," cookies identifying user "Website behavior" and browser configurations, that a website user "viewed the intro slide" or clicked the "get started" button on LifeLong's "Birthmother Communication Quiz," "user's activities while viewing [LifeLong's] potential [adoptive] families," "liking" certain

families listed in LifeLong's "Family Finder" application," and whether users of LifeLong's website "initiate[d] a call from the Website." ECF #19 at ¶¶66, 67, 68, 70, 71, 72.

What Plaintiffs describe here is nothing more than ordinary interactions with LifeLong's public website. The information alleged to have been disclosed includes basic user data, browser configurations, pages visited, and website features with which visitors interacted. The information described is standard website analytics about which there is nothing inherently sensitive or confidential. While Plaintiffs may regard such information as "sensitive," this does not make such information "confidential" for the purposes of ascribing legal liability for alleged disclosure of the same to third parties. Accordingly, Plaintiffs' Complaint fails to plausibly allege facts sufficient to satisfy the first element of a breach of confidence claim.

Next, Plaintiffs fail to plausibly allege the second element of this cause of action—that LifeLong "had knowledge that the information was being disclosed in confidence." Plaintiffs make no allegation that LifeLong knew that purportedly "confidential" information had been disclosed to it by Plaintiffs. As discussed above, the information LifeLong is alleged to have received from Plaintiffs included records of interactions with its public website and basic user analytics in connection with the same.

Similarly, Plaintiffs' allegations do not plausibly allege that there was an understanding between LifeLong and the Plaintiffs that the "confidence be

maintained," or that LifeLong disclosed or used Plaintiffs' confidential information "in violation of the understanding." In seeking to establish these third and fourth elements, Plaintiffs rely on alleged "express promises of confidentiality" from LifeLong to Plaintiffs. ECF #19 at ¶134. By this, Plaintiffs are presumably alluding to purported statements from LifeLong's privacy policy referenced in Paragraph 74 of the Complaint. However, as discussed further in Section XI, *infra*, Plaintiffs' reliance on these alleged statements is misplaced. As an initial matter, Plaintiffs cite only the alleged content of the privacy policy in March 2025 and include no allegations regarding what the privacy policy stated in May 2022 and/or November 2024 when Plaintiffs allegedly accessed LifeLong's website. *See* ECF #19 at ¶74 n.48. Further, Plaintiffs do not plead that they read or understood the policy before or while using LifeLong's website. In fact, Plaintiffs specifically allege that even "conscientious" users fail to read privacy policies for every website they visit. *Id.* at ¶44. As such, Plaintiffs cannot rely on statements from the alleged privacy policy to establish that there was an understanding between LifeLong and the Plaintiffs that "confidence be maintained," or that LifeLong disclosed or used Plaintiffs' "confidential" information "in violation of the understanding." *Cf. Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667, *15 (M.D. Pa. Feb. 14, 2025) ("Doe has not explicitly plead that he read or understood the privacy policy before he began using defendants' webpages and has instead simply attached those documents to his complaint. This approach is insufficient to plead justifiable reliance.").

Finally, as noted above, California's breach of confidence tort is based upon the "concept of an implied obligation or contract between the parties that confidential information will not be disclosed." *Genesis Creative Grp., Inc.*, 122 F.3d at 1226-27. In Count V of Plaintiffs' Complaint, Plaintiffs allege a separate cause of action for "breach of implied contract." There, Plaintiffs contend that Plaintiffs and LifeLong entered into an implied contract whereby LifeLong agreed to keep confidential the information allegedly provided by Plaintiffs to LifeLong. To preserve the Court's time, LifeLong hereby incorporates the arguments set out in Section VI, *infra*. For the reasons argued therein, Plaintiffs Complaint fails to plausibly allege that Plaintiffs and LifeLong entered into an "implied obligation or contract" with respect to the information allegedly provided by Plaintiffs to LifeLong.

In view of the foregoing, Plaintiffs fail to state a viable cause of action for breach of confidence. Plaintiffs Complaint does not plausibly allege that they provided "confidential" information to LifeLong when using its website, or that LifeLong had knowledge that Plaintiffs had provided information to it in confidence. Likewise, Plaintiffs fail to plausibly allege that Plaintiffs and LifeLong had an understanding whereby the information provided to LifeLong would be maintained in confidence, and that LifeLong subsequently disclosed the information provided to it in violation of that understanding. Accordingly, Plaintiffs' claim for breach of confidence must be dismissed.

## V. DUTY, DAMAGES, AND CAUSATION NOT PLAUSIBLY ALLEGED TO SUPPORT NEGLIGENCE CLAIM.

To sustain a negligence claim, Plaintiffs must allege duty, breach of that duty, proximate cause, and damage. *Sanchez v. Lending Tree, LLC*, 2010 U.S. Dist. LEXIS 108439, *5 (S.D. Cal. Oct. 12, 2010). "Each element must be adequately pled." *Id.* "The threshold element of a claim for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428, *7 (N.D. Cal. Sept. 14, 2016) (internal quotation marks omitted). "Whether a duty of care exists is a question of law" and thus appropriately resolved at the dismissal stage. *Id.* "[P]laintiffs may not simply aver that a defendant owed them a duty of care." *Id.*; *see also e.g.*, *Sanchez*, 2010 U.S. Dist. LEXIS 108439 at *5 (dismissing negligence claim because the plaintiff averred conclusorily that the defendant breached its duty to protect information) (citing *Twombly*, 550 U.S. at 555)). Yet, that is precisely what Plaintiffs do here in making only conclusory allegations of duty. Plaintiffs do not allege any facts or cite any privacy statutes or standards to support that LifeLong has a common-law duty to safeguard the information alleged to have been shared in this case. Moreover, while courts have held that companies have a duty to protect sensitive personal identifying information such as social security numbers and protected health information, Plaintiffs have not plausibly alleged that such a duty applies to the alleged information shared here, i.e. Plaintiffs' viewing of various adoption webpages and link clicks.

Under California law, "appreciable, nonspeculative, present" harm/damages is also an essential element of a negligence cause of action. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012). Here, Plaintiffs contend that LifeLong's alleged negligence caused them and the putative class "to suffer damages by having their highly personal, personally identifiable Sensitive Information accessed, stored, and disseminated without their knowledge or consent." ECF #19 at ¶151. Plaintiffs, however, do not explain or allege facts to support how the dissemination and storage constitutes a redressable harm and/or resulted in damages to them. While Plaintiffs allege elsewhere that LifeLong's conduct caused "emotional distress" (*id.* at ¶¶10, 192.a, 207), these allegations are precisely "the type of 'conclusory and vague' allegations which courts have held are insufficient to sustain a negligence claim at the motion to dismiss stage." *Medoff v. Minka Lighting, LLC*, No. 2:22-cv-08885-SVW-PVC, 2023 U.S. Dist. LEXIS 81398, *23-24 (C.D. Cal. May 8, 2023) (citing cases).

Moreover, even if Plaintiffs had adequately alleged harm, Plaintiffs have failed to plead facts that plausibly connect the alleged breach of duty to the alleged harm for purposes of pleading the causation element. Notably, Plaintiffs concede that default Pixels utilized by Google and Facebook record and transmit user behavior "such as clicking a link, clicking on an advertisement, or viewing a webpage." ECF #19 at ¶72. Plaintiffs have not plausibly alleged sufficient facts to conclude that the conclusory assertions of harm were the result of anything but Google and Facebook's

default tracking tools when Plaintiffs searched for adoption agency websites and/or inserted LifeLong's website into their browser while logged into those services.

## VI. IMPLIED CONTRACT ALLEGATIONS FAIL.

"An implied contract is one, the existence and terms of which are manifested by conduct." Cal. Civ. Code § 1621. "To plead breach of an implied contract, a plaintiff must allege: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Castillo*, 2016 U.S. Dist. LEXIS 187428 at *28 (internal quotations omitted). Here, Plaintiffs fail to sufficiently allege the existence of a contract (specifically mutual assent and consideration)[3] and resulting damages.

"An implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter." *Id.* (internal quotations omitted). Mutual assent for an implied contract demands that both parties agree to the contract's terms and have a "meeting of the minds" which can be manifested by conduct rather than words. *Id.* In support of their implied contract claim, Plaintiffs allege that they provided their personal information in exchange for services from LifeLong with the understanding that LifeLong would safeguard their information. *See* ECF #19 at ¶155. This conclusory allegation on its own, however, is insufficient to support that

[3] By clear implication, Plaintiffs also fail to adequately allege any breach as there can be no breach absent a contract.

a meeting of the minds was reached. Indeed, there are no specific facts to support the conclusion that LifeLong agreed to provide Plaintiffs services in exchange for Plaintiffs' website views or link clicks. Rather, the Complaint alleges only Plaintiffs' unsolicited, unilateral viewing of and link clicking within LifeLong's public website with no assenting conduct from LifeLong whatsoever. Moreover, while industry customs and practices may inform whether an implied contract was reached (*see Starship, LLC v. Ghacham, Inc.*, 2023 U.S. Dist. LEXIS 156799, *41-42, 48 (C.D. Cal. July 17, 2023)), Plaintiffs allege no facts to support that custom dictates that Plaintiffs' use of LifeLong's website created an implied-in-fact contract by the parties. There is similarly no alleged conduct on the part of LifeLong evidencing an implied-in-fact agreement to keep Plaintiffs' website views and link clicks private from Google and Facebook. For all of these reasons, mutual assent has not been sufficiently alleged.

Plaintiffs also fail to plausibly allege consideration. While mutual promises can in certain instances be deemed sufficient consideration for each other (*see Mar. v. Perkins*, 102 Cal. App. 5th 201, 213 (2024)), Plaintiffs do not allege they *promised* to do anything. For instance, Plaintiffs do not allege that they promised to utilize LifeLong's adoption services in exchange for LifeLong providing the services and/or LifeLong's agreement to keep their interest in adoption confidential.[4] Nor do they

[4] And realistically speaking, LifeLong could not agree to keep Plaintiffs' interest in adoption confidential from third parties in that event, because connecting the Plaintiffs with prospective parents is clearly essential

plausibly allege, as explained *supra*, that LifeLong promised anything to them. In the absence of plausibly pled consideration, the implied contract claim cannot be sustained.

Plaintiffs' implied contract claim also fails to adequately plead legally cognizable damages. As the California Supreme Court has explained, contract law is intended to cover only economic losses due to disappointed expectations/promises. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Harm above and beyond a broken contractual promise is to be remedied by resort to the law of torts. *Id.* Here, however, Plaintiffs do not plausibly allege any economic loss as a result of the alleged breach. Rather, at best, Plaintiffs provide conclusory allegations of personal injury (e.g. "emotional distress") which falls outside the law of contract. *See Scott v. Bluegreen Vacations Corp.*, 2018 U.S. Dist. LEXIS 198840, *10 (E.D. Cal. Nov. 20, 2018) ("California law is clear that [emotional distress] damages are not allowed in typical breach-of-contract claims."); *Riggs v. MySpace, Inc.*, 444 F.App'x 986, 987 (9th Cir. 2011) (affirming dismissal of breach of contract claim where only emotional distress damages were alleged).[5] For this reason too, the

to LifeLong's offered services.

[5] To the extent Plaintiffs attempt to rely on the alleged value of the subject information to establish economic loss, this argument too fails under Ninth Circuit precedent. *See Pruchnicki v. Envision Healthcare Corporation*, 845 Fed. Appx. 613, 614-15 (9th Cir. 2021) (affirming dismissal of a breach of implied contract claim, reasoning: "Although the studies cited by [plaintiff] establish that personal information may have value in general, [plaintiff] failed to adequately allege that *her* personal information actually lost value. Several courts in this Circuit have found, and we agree, that the mere misappropriation of personal information does not establish compensable damages.") (emphasis in original) (internal quotation marks omitted).

implied contract claim should be dismissed.

## VII. UNJUST ENRICHMENT ALLEGATIONS FAIL.

As an alternative to Plaintiffs' implied breach of contract claim, Plaintiffs also bring a claim for unjust enrichment. *See* ECF #19 at ¶162. "Under California law, there is no independent cause of action for unjust enrichment." *Saedi*, 2025 U.S. Dist. LEXIS 83660 at *39. However, "California courts may treat unjust enrichment claims as a quasi-contract claim seeking restitution." *Id.* Quasi-contract is an equitable remedy implied by the law under which a plaintiff that has conferred a benefit to the defendant may recover the reasonable value of that benefit when necessary to prevent unjust enrichment of the defendant. *See Swafford v. IBM*, 383 F. Supp. 3d 916, 931-32 (N.D. Cal. 2019). Under California law, however, to prevail on such a theory requires evidence of reasonable expectation of payment for the benefit conferred. *See id.*; *see also Chitkin v. Lincoln Nat'l Ins. Co.*, 879 F. Supp. 841, 862 (S.D. Cal. 1995) (explaining that the following elements encompass the equitable remedy of unjust enrichment and quasi-contract: (1) plaintiff had a reasonable expectation of payment, (2) defendant should reasonable have expected to pay, or (3) society's reasonable expectations would be defeated by nonpayment).

Here, Plaintiffs make no factual allegations from which it could be inferred that LifeLong should have reasonably expected to pay Plaintiffs for information allegedly disclosed via Pixels. Nor do Plaintiffs allege that LifeLong or other website operators regularly pay website visitors for the same type of information. Plaintiffs

also do not allege any facts to suggest that they reasonably expected to be paid by LifeLong for the information alleged. Rather, at best, Plaintiffs allege that a market exists for consumers' browsing histories, generally. *See* ECF #19 at ¶¶88-89. That some companies may pay consumers for their complete browsing history does not support any reasonable expectation that LifeLong *specifically* (or website operators, generally) should or do compensate users for their website views and link clicks. As such, Plaintiffs' unjust enrichment claim fails and should be dismissed.

## VIII. ALLEGATIONS DEFEAT ECPA CLAIM.

The ECPA prohibits the unauthorized interception of the "contents" of an electronic communication. *See* 18 U.S.C. § 2511. Plaintiffs complain that "[b]y utilizing and embedding the Pixels on its Website, [LifeLong] intentionally intercepted, endeavored to intercept, and procured another person to intercept the electronic communications of Plaintiffs" and putative class(es) in violation of the ECPA. ECF #19 at ¶180. The statute, however, contains a one-party consent provision, which precludes liability where "one of the parties to the communication has given prior consent" to the interception. 18 U.S.C. § 2511(2)(d). Plaintiffs' allegations are self-defeating as their complaint is only susceptible to an inference that LifeLong, as the operator of the website (*see* ECF #19 at ¶42), consented to the use of data collection tools allegedly installed on its website. *See Roe v. Amgen Inc.*, 2024 U.S. Dist. LEXIS 101754, *15 (C.D. Cal. June 5, 2024); *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023).

Plaintiffs will presumably assert in response that the crime-tort exception applies, thereby precluding application of the one-party consent rule. The crime-tort exception, however, requires "them to plead sufficient facts to show that 'the **primary** motivation or **a determining factor** in the interceptor's actions has been to injure plaintiffs tortiously.'" *Katz-Lacabe*, 668 F.Supp. 3d at 945 (emphasis added) (quoting *Rodriquez v. Google, LLC*, 2021 U.S. Dist. LEXIS 98074, 22 n.8 (N.D. Cal. May 21, 2021)). Although Plaintiffs allege that LifeLong's actions were "done for purposes of committing criminal and tortious acts" (ECF #19 at ¶187), such allegations are insufficient to defeat the consent provision for multiple reasons. **<u>First</u>**, the allegations amount to nothing more than conclusions couched as fact and thus, should be ignored at the dismissal stage. *See Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) ("we do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations") (internal quotation marks omitted); *Arnold v. Corecivic of Tenn.*, 2021 U.S. Dist. LEXIS 2868, *5 (S.D. Cal. Jan. 6, 2021) ("a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences").

**<u>Second</u>**, for the crime-tort exception to apply, a plaintiff must plausibly allege that the criminal or tortious purpose "is independent of the interception itself." *Saedi*, 2025 U.S. Dist. LEXIS 83660 at *34; *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("criminal or tortious purpose must be separate and independent from the act of the [interception]"); *see also Pena v.*

*GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023) (dismissing ECPA claim where party exception applied and plaintiff failed to allege "independently illegal or actionable conduct"). Here, however, Plaintiffs have failed to allege any facts to support independently illegal or actionable conduct beyond the interception itself. Rather, it is Plaintiffs' position that the interception itself is criminal and/or tortious in that it is alleged that the tracking tools are both the means of interception and the cause of violations. *See e.g.*, ECF #19 at ¶197. As the Ninth Circuit has explained, where just the means of interception are illegal or tortious, "victims must seek redress elsewhere." *Sussman v. ABC*, 186 F.3d 1200, 1202-03 (9th Cir. 1999). In other words, illegal purpose is not plausibly inferred simply by alleging that the interception itself constituted a tort or crime. Accordingly, here, Plaintiffs have failed to plausibly allege a basis for liability under the crime-tort exception. *See Doe v. Kaiser Foundation Health Plan, Inc.*, 2024 U.S. Dist. LEXIS 66733, 6-7, 27-28 (N.D. Cal. Apr. 11, 2024) (dismissing ECPA claim with similar allegations because the "act of interception itself cannot be the crime or the tort"). **Third**, as argued throughout this motion, Plaintiffs have failed to plausibly allege any violation of the law (whether independent from the inception or not), thereby dooming the claimed crime-tort exception for this reason as well. *See Saedi*, 2025 U.S. Dist. LEXIS 83660 at *38-39 ("Where the Party Exemption is applicable and the plaintiff has failed to sufficiently invoke the Crime-Tort Exception, the defendant is exempt.").

**Lastly**, Plaintiffs have failed to plausibly plead the crime-tort exception

because the alleged purpose for using the tacking tools was financially motivated. As explained *supra*, to employ the exception, Plaintiffs must plausibly plead that the primary or determining purpose for the interception was to injure them tortiously. Acting for commercial or monetary gain is not a criminal or tortious purpose. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Multiple courts in this district have held that the crime-tort exception to [ECPA] is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously."); *In re Google, Inc. Gmail Litig.*, 2014 U.S. Dist. LEXIS 36957 *70 n.13 (N.D. Cal. March 18, 2014) (crime-tort exception does not apply where defendant's primary motivation is monetary). And here, Plaintiffs *repeatedly* allege *specific* facts that the motivation for LifeLong to share Plaintiffs' information with Google and Facebook was monetary in nature. *See* ECF #19 at ¶193 ("Defendant intentionally used the wire or electronic communications to increase its profit margins. Defendant specifically used the Pixels to track and utilize Plaintiffs' and Class Members' Sensitive Information for financial gain."), ¶85 (alleging LifeLong received "compensation in the form of advanced advertising services and cost-effective marking on third-party platforms" in exchange for use of tracking tools); ¶7 (alleging LifeLong "prioritize[d]" these "marketing efforts over its customers' privacy"); *see also e.g.*, *id.* at ¶¶42, 84, 163-64. As there are no allegations of fact to plausibly support that LifeLong's primary motivation was to injure Plaintiffs and/or the putative class rather than the commercial/monetary gains

specifically alleged, Plaintiffs have failed to plausibly allege the crime-tort exception applies for this reason as well.

The ECPA claim also fails because all of the information allegedly shared is considered record information. The ECPA distinguishes between "content" and record information. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1104, 1107 (9th Cir. 2014). Sharing of the latter does not violate the ECPA. *Id.* Record information refers to the characteristics of a message and includes such information as name, address, or subscriber number or identity as well as the origination, length and time of a communication. *Id.* at 1104, 1107. Here, the "Sensitive Information" LifeLong is alleged to have shared with Google and Facebook amounts to Plaintiffs' mere browsing of LifeLong webpages and clicking links which the Pixels connected to Plaintiffs' Google or Facebook user IDs.[6] *See* ECF #19 at ¶¶2, 5, 47, 53-56, 66-67.[7] As the Ninth Circuit has unequivocally held, however, webpage views and user IDs do "not meet the definition of 'contents,' because these pieces of information are not the 'substance, purport, or meaning' of a communication." *See In re Zynga Privacy Litig.*, 750 F.3d at 1107 (reasoning that "[a] Facebook ID identifies a Facebook user

[6] Plaintiffs also specifically allege that the Pixels tracked the fact that Plaintiffs placed a call to Lifelong. *See* ECF #19 at ¶68. But the mere fact that a call was placed similarly qualifies as record information. Indeed, Plaintiffs do not allege any facts to support that the call ever connected and/or that the Pixels tracked the content of the call. Notably, anyone can click the link, not just women with unplanned pregnancies. Thus, absent facts to support the calls connected and the communication was recorded as well the contents of the communication, there is no viable basis to conclude that content was involved and/or transmitted.

[7] Indeed, there are no allegations that Plaintiffs inputted any personal information about themselves into LifeLong's website. And the assumption is they did not as they claim the tracking tools work even if users do not input any information about themselves such as through an online form. *See* ECF #199 at ¶¶5, 56.

and so functions as a 'name' or a subscriber number or identity'" and "[s]imilarly, the webpage address identifies the location of a webpage a user is viewing on the internet, and therefore functions like an 'address'").

Indeed, the legal theory presented in this case is identical to that rejected by the Ninth Circuit. Specifically, in *In re Zynga Privacy Litig.*, plaintiffs argued that the transmission of webpage addresses reveals the contents of a communication because they disclose the specific information viewed by a user. *Id.* at 1108. For purposes of example, plaintiffs presented the following hypothetical:

> [I]f a Facebook user who was gay and struggling to come out of the closet was viewing the Facebook page of a gay support group, and then clicked on an ad, the advertiser would know . . . that s/he was viewing the Facebook page of a gay support group just before navigating to their site.

*Id.* at 1108. (internal quotation marks omitted). The Ninth Circuit rejected the argument, holding that a webpage address includes only basic identification and address information for which there is no reasonable expectation of privacy. *Id.* at 1108-09. Similarly, here, Plaintiffs complain by sharing their webpage views, Google and Facebook obtained sensitive information that Plaintiffs viewed webpages about adoption. Under binding precedent, however, such information does not constitute "content" and does not trigger the protections of the ECPA.

## IX. UCL CLAIM FAILS FOR LACK OF STATUTORY STANDING.

To bring a successful UCL claim, a plaintiff must have "suffered injury in fact **<u>and</u>** [] lost money or property as a result of the unfair competition." Cal. Bus. & Prof.

Code § 17204 (emphasis added); *see also California Medical Assn. v. Aetna Health of California Inc.*, 14 Cal. 5th 1075 (2023) ("The UCL confers standing on a private plaintiff to seek relief under the statute only if that plaintiff has "suffered injury in fact" and "lost money or property as a result of the unfair competition" at issue.") (citing Cal. Bus. & Prof. Code § 17204). Here, Plaintiffs' claim fails for failure to plausibly plead loss of money or property. Plaintiffs do not allege that they lost money as a result of LifeLong's conduct. Instead, Plaintiffs allege that LifeLong unlawfully shared their personal information with Google and Facebook. But "[a] plaintiff's personal information does not constitute property under the UCL." *In re Facebook Privacy Litig.*, 791 F. Supp. 3d 705, 714 (N.D. Cal. 2011), *aff'd* 572 F. App'x 494 (9th Cir. 2014); *see also Katz-Lacabe*, 668 F.Supp. 3d at 943-44 ("weight of authority in the district and state" support that "the mere misappropriation of personal information" does not establish loss of property or money under the UCL) (internal quotation marks omitted); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) ("[T]he sharing of names, user IDs, location and other personal information does not constitute lost money or property for UCL standing purposes."); *Campbell v. Facebook*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (courts "have consistently rejected" a broad interpretation of "money or property" to include personal information).

While Plaintiffs vaguely assert that the lost money or property in this case also includes payments Plaintiff E.H. and/or the California subclass made to LifeLong

(ECF #19 at ¶220), there are no allegations of specific fact that Plaintiff E.H. paid anything to LifeLong nor is there any reasonable basis to infer from the allegations that she did.[8] And although Plaintiffs assert vague, conclusory allegations regarding some companies paying for browsing history information (ECF #19 at ¶89), that there is or was[9] an economic market in some instances for browsing information generally is insufficient for Plaintiff E.H. to plausibly plead she *herself* lost any money or property. *See Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022) (holding that allegations that personal information was stolen and disseminated and that a market for the information existed was insufficient on its own to create standing under UCL).

*Roe v. Amgen Inc.* is instructive. In *Roe v. Amgen Inc.*, plaintiffs alleged that defendant embedded tracking pixels on its website which sent their confidential, personal medical information to third parties, including Meta (i.e. Facebook) and Google. 2024 U.S. Dist. LEXIS 101754, *3-4 (C.D. Cal. June 5, 2024). Similar to Plaintiffs here, the Roe plaintiffs brought a UCL claim citing reports describing the economic market for consumers' personal data.[10] *Id.* at *21. The district court rejected the allegations as insufficient, reasoning that "including vague allegations

---

[8] Moreover, even if the allegations supported E.H. paid LifeLong, there are no allegations to support that money was paid for purposes of safeguarding her information.

[9] For instance, Plaintiffs allege that Facebook ceased paying users for such information after 2019. ECF #199 at ¶90.

[10] *See* ECF #199 at ¶¶87-90 (citing reports of economic market generally).

that personal information in some instances has monetary value is insufficient for Plaintiff to allege [an actual] loss." *Id.* (internal quotations omitted). The same reasoning applies here.

Simply put, it is not enough to allege information with value generally was taken. Rather, a UCL plaintiff must show how the information has economic value to him/her specifically. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) ("That the information has external value, but no economic value to plaintiff cannot serve to establish that plaintiff has personally lost money or property."). Here, there are no facts that indicate that Plaintiffs themselves ascribed an economic value to the alleged personal information at issue. For instance, Plaintiffs do not allege that they ever attempted or intended to participate in a market for the information allegedly shared by LifeLong,[11] or otherwise derive economic value from the information.[12] This is fatal to the UCL claim. *See Lau v. Gen Digit, Inc.*, 2023 U.S. Dist. LEXIS 236720, *20 (N.D. Cal. Sept. 13, 2023) ("Plaintiffs fail to 'adequately plead that they lost money or property' because they do not allege that

---

[11] Contrary to suggesting that Plaintiffs intended to enter into any such market, Plaintiffs' allegations support that their and the putative class members' interest in adoption is so personal and private that they do not want third parties to know about their interactions with LifeLong's website and thus, would never attempt to sell the information. *See* ECF #199 at ¶1.

[12] Nor do Plaintiffs allege facts to support that any prospective purchaser of the alleged shared information would refuse to enter into a transaction with them or insist on less favorable terms because the information had already been shared with Google and/or Facebook. Thus, even if Plaintiffs intended to sell their own information – an intention that is nowhere alleged – they have nonetheless failed to establish whether or how the data was devalued by LifeLong's alleged actions. *See Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 994 (2011) (reasoning that the fact information had value to defendant "does not mean that its value to plaintiff was diminished in any way").

'they ever attempted or intended to participate' in the market for the information allegedly collected and stored by Defendants, 'or otherwise to derive economic value from' that information.") (quoting *Moore*, 83 Cal. App. 5th at 538).

## X. ALLEGATIONS DO NOT PLAUSIBLY SUPPORT WESCA CLAIM.

Pennsylvania's WESCA provides "'[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used'" in violation of the statute a private right of action against "any person who intercepts, discloses or uses" those communications. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. 2022) (quoting 18 Pa. C.S. § 5725(a)). WESCA, however, does not cover conduct occurring outside Pennsylvania such as when a person in New York records a communication with someone in Pennsylvania. *Id.* at 130. The reasoning for this is simple; Pennsylvania has no power to control activities occurring outside the state. *Id.* Although WESCA does not explain where an interception occurs, the statute is clear that an interception involves an "acquisition" which means "to come into possession or control of." *Id.* Here, the major flaw in Plaintiff V.P.'s WESCA claim is that there are no allegations of fact to support that LifeLong, who is alleged to be located in Illinois (ECF #19 at ¶22), accessed or acquired V.P.'s alleged content in Pennsylvania. *Cf. Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667, *12 (M.D. Pa. Feb. 14, 2025) (finding plaintiff "include[d] sufficient factual material to support the plausible inference that the intercept happened in Pennsylvania, where defendants maintain their respective principal places of business, and not Ohio,

where he accessed the webpage."). As Plaintiffs have not included sufficient factual allegations to support the plausible inference that WESCA applies to the alleged interception of Plaintiff V.H.'s information, the WESCA claim should be dismissed.

The WESCA claim should also be dismissed pursuant to the consent exception. Like the ECPA, WESCA includes exceptions from liability. One such exception, is the all-party consent exception, under which it is not unlawful for someone to "intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception." 18 Pa. C.S. § 5704(4). Notably, the Pennsylvania Supreme Court has stated that "prior consent" in § 5704(4) does not require "actual knowledge." *Commonwealth v. Byrd*, 661 Pa. 85, 98 (2020). Rather, "prior consent" can be demonstrated when the person "knew or should have known" about the interception. *Id.* This standard is one of the reasonably intelligent person, and not the *subjective* knowledge of the plaintiff. *Id.*

Here, Plaintiffs fail to plausibly allege that a reasonably intelligent person would not know that when logged into their Google and Facebook accounts, that Google and Facebook record website interactions for purposes of tailored advertising. To the contrary, Plaintiffs include an abundance of allegations regarding longstanding *default* surveillance of internet usage conducted by Google ("the largest advertiser and compiler of user information") and Facebook ("the largest social media company on earth") – which they describe as "ubiquitous." *See* ECF #19 at ¶¶9, 29-35, 38, 40, 53, 72. Nowadays, given the tailored advertisements that all

Google and Facebook users[13] receive after visiting a website or conducting a search inquiry, it is common knowledge that websites views and website interactions are recorded and shared with Google and Facebook when the user is logged in to those services. Plaintiffs' substantial allegations as to the tracking that occurs by these companies tends to confirm as much. Having alleged that they were logged in to these services, Plaintiffs either were or should have been aware that their website interactions were likely being recorded by Google and/or Facebook. And as such, they consented by conduct to the alleged interception, thereby defeating there WESCA claim.

## XI. UTPCPL FAILS FOR LACK OF JUSTIFIABLE RELIANCE AND DAMAGES.

Plaintiff V.P. fails to state a claim under Pennsylvania's UTPCPL as she has not plausibly pled the elements of justifiable reliance and damages. "To succeed on a UTPCPL claim, a plaintiff must demonstrate that justifiable reliance on the defendant's actions caused damages." *Post Acute Med.*, 2025 U.S. Dist. LEXIS 26667 at 14 (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 501 (2004)). "The justifiable reliance inquiry involves consideration of several factors, including the relationship between the parties, the nature of the transactions that occurred between them, and whether the plaintiff knew or should have known that the inducements they were

[13] And per allegations, the vast majority of Americans makeup such users. *See* ECF #199 at ¶¶57-58.

offered were false." *Id.* Courts "may determine justifiable reliance as a matter of law even at the motion to dismiss stage." *Id.* (citing *Hunt*, 538 F.3d at 227-28 (affirming dismissal of case for failure to plead facts demonstrating justifiable reliance).

Here, Plaintiffs' allegations do not lend themselves to a presumption of reliance. To the contrary, Plaintiffs spend a substantial portion of their Complaint detailing facts regarding Google and Facebook's vast surveillance efforts. As explained *supra*, in light of such allegations, Plaintiffs have failed to allege that they justifiably believed their website interactions would not be shared with Google and Facebook. While Plaintiffs also cite LifeLong's privacy policy, any claimed reliance on the privacy policy fails for two reasons. **First**, Plaintiffs cite only the content of the privacy policy in March 2025 and include no allegations to support what the privacy policy stated in May 2022 and/or November 2024 when Plaintiffs allegedly accessed the website. *See* ECF ¶74 n.48. **Additionally**, Plaintiffs do not plead that they read or understood the policy before using LifeLong's website. To the contrary, they make the point that it is not feasible for even "conscientious" users to read privacy policies for every website they visit. *Id.* at ¶44. Thus, any claimed reliance on the alleged privacy policy cannot save the UTPCPL claim. *See Post Acute Med.*, 2025 U.S. Dist. LEXIS 26667 at 15 ("Doe has not explicitly plead that he read or understood the privacy policy before he began using defendants' webpages and has instead simply attached those documents to his complaint. This approach is insufficient to plead justifiable reliance.").

The UTPCPL claim is independently deficient in another respect: it does not contain facts demonstrating "any ascertainable loss of money or property." *See id.* (quoting 73 Pa. C.S. § 201-9.2). "Threadbare allegations of lost time or emotional distress will not suffice; facts from which an ascertainable loss of money or property can be plausibly inferred are required." *Id.* (citing cases). As explained in detail above, Plaintiffs have set forth only conclusory allegations of damages, none of which plausibly support a loss of money or property. Accordingly, the UTPCPL claim should be dismissed for this reason as well.

## XII. CIPA CLAIM FAILS FOR SAME REASONS AS ECPA CLAIM.

"Claims under CIPA and ECPA are analyzed similarly." *Amgen, Inc.*, 2024 U.S. Dist. LEXIS 101754 at *16. "Like the ECPA, Section 631 contains an exemption from liability for a person who was a party to a communication." *Id.* (internal quotation marks omitted); *see also Brodsky v. Apple Inc.*, 2019 U.S. Dist. LEXIS 148808, *15 (N.D. Cal. Aug. 30, 2019) ("Courts have interpreted the CIPA to prohibit only third-party access to ongoing communications.") (internal quotation marks omitted). Here, the only communications that Plaintiffs allege Lifelong "intercept[ed]" are Plaintiffs' communications to Lifelong. ECF #19 at ¶238. LifeLong, of course, cannot intercept communications to which it is already a party. *See Brodksky*, 2019 U.S. Dist. LEXIS 148808 at *15 ("Apple cannot intercept communications to which Apple is already a party. Thus, Plaintiffs have not alleged a violation of the CIPA."). Accordingly, to the extent Plaintiffs are alleging that

Lifelong itself intercepted communications in violation of the second clause in § 631, dismissal is warranted. *See e.g.*, *Amgen, Inc.*, 2024 U.S. Dist. LEXIS 101754 at *16 (dismissing CIPA claim for failure to overcome party exemption).

Dismissal of Plaintiffs' aiding and abetting theory under the fourth clause in § 631 is similarly warranted because like the ECPA, CIPA distinguishes between "content" and record information. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). As argued *supra*, all of the information LifeLong allegedly conspired to share with Facebook and Google is considered record information. Because a CIPA claim, like an ECPA claim, cannot be predicated on such record information, Plaintiffs' CIPA claim fails for this reason as well. *See id.*

## **CONCLUSION**

For the reasons stated and argued herein, Plaintiffs' First Amended Complaint should be dismissed in its entirety. Moreover, because Plaintiffs failed to cure the deficiencies previously outlined by Lifelong when filing their Amended Complaint, and because necessary allegations to save the claims would in many instances conflict with allegations already pled, the dismissal should be with prejudice.

Dated: July 21, 2025 **MESSER STRICKLER BURNETTE, LTD.**

*/s/ Luke K. Chamberlain*
Luke K. Chamberlain
Attorney for Defendant
LifeLong Adoptions, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 21, 2025, a true and correct copy of the foregoing **DEFENDANT'S 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT** was served electronically via the U.S. District Court CM/ECF system to counsel as set forth on the docket.

By: *<u>/s/ Luke K. Chamberlain</u>*
Luke K. Chamberlain