Catherine Ybarra (SBN# 283360)
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Suite 1000 Los Angeles, CA 90017 Telephone: (213) 297-3807 Facsimile: (646) 417-5967 cybarra@sirillp.com

Tyler J. Bean*
Sonjay C. Singh
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (772) 783-8436
*tbean@sirillp.com
ssingh@sirillp.com (*pro hac vice*)

**pro hac vice* forthcoming

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

E.H. and V.P., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**LIFELONG ADOPTIONS, INC.,**

Defendant.

No. 1:25-cv-00441-JLT-BAM

**PLAINTIFFS' RESPONSE TO DEFENDANT'S 12(B)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........ 1
II. FACTUAL BACKGROUND ........ 2
A. The Parties ........ 2
B. Google and Facebook's Tracking Tools ........ 3
C. LifeLong's Use of the Tracking Tools ........ 3
III. LEGAL STANDARD ........ 4
IV. ARGUMENT ........ 5
A. Plaintiff V.P.'s Claims are Not Barred by the Statute of Limitations. . 5
B. Plaintiffs' Privacy Claims are Meritorious. ........ 7
C. Plaintiffs' Breach of Confidence Claim is Well Pled ........ 11
*i. Plaintiffs' Sensitive Information was confidential.* ........ 11
*ii. Both Plaintiffs and LifeLong understood that Plaintiffs' Sensitive Information was communicated in confidence* ........ 12
D. Plaintiffs' Negligence Claim is Well-Pled. ........ 13
*i. LifeLong had a duty to protect Plaintiffs' Sensitive Information.* ........ 13
*ii. Plaintiffs allege cognizable damages.* ........ 14
*iii. Causation* ........ 15
E. Plaintiffs' Unjust Enrichment Claim is Well-Pled. ........ 16
F. Plaintiffs' Electronic Communications Privacy Act ("ECPA") Claim is Well-Pled. ........ 17
*i. Plaintiffs' allege that LifeLong had a criminal and tortious purpose in intercepting their communications* ........ *17*
*ii. LifeLong's tortious purpose is not negated by its financial motive* ........ *19*

*iii. The Sensitive Information alleged by Plaintiffs is not record information* .......... *21*

G. Plaintiff V.P.'s Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") Claim is Well Pled.......... 23

H. Plaintiff E.H,'s California Invasion of Privacy Act ("CIPA") Claim is Well-Pled.......... 25

*i. Plaintiff alleges a direct violation of CIPA.* .......... 26

*ii. Plaintiff plausibly alleges that LifeLong aided and abetted Facebook and Google.* .......... 27

*iii. The Sensitive Information alleged by Plaintiff E.H. constitutes the "contents" of her communications with LifeLong.* .......... 28

V. CONCLUSION .......... 28

# TABLE OF AUTHORITIES


*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ......... 6, 8, 15

*In re Anthem Inc. Data Breach Litig.*,
2016 U.S. Dist. LEXIS 70594 (N.D. Cal. May 27, 2016) ................... 17

*Arndt v. Gov't Emps. Ins. Co.*,
750 F. Supp. 3d 518 (D. Md. 2024) ................................................. 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 5

*D. et al. v. Aspen Dental Management, Inc.*
2024 U.S. Dist. LEXIS 161090 ........................................................ 20

*B.K. v. Desert Care Network*,
2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024) ............. 6, 8, 12

*B.K. v. Eisenhower Med. Ctr.*,
2024 U.S. Dist. LEXIS 67497 (C.D. Cal. Apr. 11, 2024) .............. 19, 20

*Braun v. Phila. Inquirer, LLC*,
2023 U.S. Dist. LEXIS 202528 (E.D. Pa. Nov. 13, 2023) ......................... 22

*Broberg v. The Guardian Life Ins. Co. of America*,
90 Cal. Rptr. 3d 225 (Cal. Ct. App. 2009) ............................................ 5

*Brown v. Google, LLC*,
525 F.Supp.3d 1049 (N.D. Cal. 2021) ................................................. 6

*C.M. v. MarinHealth Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 10189 (N.D. Cal. Jan. 19, 2024) ..................... 16

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ................................................................. 5

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ....... 18, 21

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........................................... 19, 20

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ................................................... 9

*Doe v. Fullstory, Inc.*,
712 F.Supp.3d 1244 (N.D. Cal. 2024) ........................................... *passim*

*Doe v. N. Cal. Fertility Med. Ctr.*,
2024 U.S. Dist. LEXIS 12175 (E.D. Cal. Jan. 22, 2024)...................... 15

*Doe v. Post Acute Med., LLC*,
2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) ..................... 23

*Doe v. Regents of the Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .................................................. 9

*Doe v. Tenet Healthcare Corp.*,
2025 U.S. Dist. LEXIS 109134 (E.D. Cal June 9, 2025)........................ 8

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
122 F.3d 1211 (9th Cir. 1997)............................................................. 11

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................ 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d (9th Cir. 2020)........................................................................ 8

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................ 16

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ................................................ 13

*Fox v. Ethicon Endo-Surgery, Inc.*,
110 P.3d 914 (Cal. 2005) ...................................................................... 6

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sep. 16, 2024)............. 19, 20

*Gonzalez v. JP Morgan Chase Bank, N.A.*,
2014 U.S. Dist. LEXIS 152674 (N.D. Cal. Oct. 28, 2014)..................... 7

*Hartley v. Univ. of Chi. Med. Ctr.*,
2024 U.S. Dist. LEXIS 78517 (N.D. Ill. Apr. 30, 2024) ...................... 20

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......................................................................... 8

*Hopkins v. Dow Corning Corp.*,
33 F.3d 1116 (9th Cir. 1994)................................................................. 5

*Howard v. Lab'y Corp. of Am.*,
2024 U.S. Dist. LEXIS 174067 (M.D.N.C. Aug. 8, 2024)................... 23

*Javier v. Assurance IQ LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........................................... 25, 26

*Kane v. Univ. of Rochester*,

2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024)............ 19, 20

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 U.S. Dist. LEXIS 178369 (N.D. Cal. Oct. 3, 2023).................... 16

*Knappenberger v. City of Phoenix*,
566 F.3d 936 (9th Cir. 2009) ......................................................... 5

*Kurowski v. Rush Sys. for Health*,
2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023) ................. 19

*Lau v. Gen. Digit. Inc.*,
2024 U.S. Dist. LEXIS 81310 (N.D. Cal. Apr. 3, 2024)...................... 9

*Loyola Univ. Med. Ctr.*,
2024 U.S. Dist. LEXIS 119995 ........................................................ 20

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ......................................................... 23

*M.G. v. Therapymatch, Inc.*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sep. 16, 2024)................ 26

*Mayer v. Midwest Physician Administrative Services*, LLC,
2025 U.S. Dist. LEXIS 60486 (N.D. Ill. Mar. 31, 2025) .................. 20

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ........................................ 19, 20

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)...................................... 8, 9, 25

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)............................................... 14

*Modisette v. Apple Inc.*,
30 Cal. App. 5th 136 (2018) ........................................................... 14

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ........................................................ 10

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014)........................................ 10, 11

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ....................................................... 22, 23

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)............................................... 25

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025).............. 19, 20

*Rhynes v. Stryker Corp.*,
2011 U.S. Dist. LEXIS 124510 (N.D. Cal. Oct. 27, 2011) .................. 6

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 U.S. Dist. LEXIS 83660 (C.D. Cal. Feb. 27, 2025) .................. 11

*Sanchez-Scott v. Alza Pharm.*,
86 Cal. App. 4th 365 (Ct. App. 2001) .................. 10

*Silver v. Stripe Inc.*,
2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021) .................. 8, 9

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .................. 9, 26

*Stein v. Edward-Elmhurst Health*,
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) .................. 19

*Toy v. Life Line Screening of Am. Ltd.*,
2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024) .................. 11, 15

*Vishal Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .................. 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 U.S. Dist. LEXIS 140212 (N.D. Cal. Aug. 30, 2017) .................. 17

*In re Zynga Privacy Litigation*,
750 F. 3d 1098 (9th Cir. 2014) .................. 21, 22

**Statutes**

18 U.S.C. § 2510(8) .................. 21, 22

18 U.S.C. § 2511(1)(c)-(d) .................. 17

18 U.S.C. § 2511(2)(d) .................. 17

18 Pa. C.S. § 5725(a) .................. 22

Cal. Civ. Code § 1714 .................. 14

Cal. Penal Code § 631(a) .................. 25, 26

## I. PRELIMINARY STATEMENT

The decision to place a child up for adoption is one of the most difficult decisions that a woman can make. Further compounding that difficulty is the significant social stigma that is often attached to both unplanned pregnancy and placing a child up for adoption. As a result, the unwanted disclosure of such information can be enormously harmful, impacting an individual's reputation, livelihood, and personal relationships. And, if people struggling with the heartbreaking decision of whether to surrender their child to an adoption service are unable to trust that the organizations purporting to offer them help will protect their sensitive, private information, they are less able to seek help when they need it most. Such concerns became reality for Plaintiffs, as each struggled with an unplanned pregnancy and sought the assistance of Defendant LifeLong Adoptions, Inc. ("LifeLong" or "Defendant"). When they did, they assumed that their decision to seek adoption placement for an unintended pregnancy would be held to a paramount standard of confidentiality. Unfortunately, it was not.

LifeLong is an adoption clinic that works with expectant mothers seeking to place their child with an adoptive family. LifeLong's website, www.lifelongadoptions.com (the "Website"), specifically targets pregnant women and urges them to contact LifeLong for a consultation by filling out an online form or launching a phone call directly through the Website. The Website also allows pregnant mothers to download informational material specifically written for mothers considering placing a child up for adoption, take a "Birthmother Communication Quiz" to identify the type of adoption that would be best for their circumstances, and even review potential families that are looking to adopt a child. Plaintiffs made use of these features offered on the Website, but when they did, they did not and could not know that every action they took was being tracked, compiled and disclosed to the largest advertisers in the world in exchange for enhanced advertising and marketing services. Indeed, LifeLong installed advertising

surveillance software produced by Google and Facebook (the "Tracking Tools") onto its Website that allowed those internet behemoths to harvest Website users' sensitive, personally identifiable information for the purpose of targeted advertising. This information included some of the most sensitive aspects of Plaintiffs' lives, including the fact that they were experiencing an unintended pregnancy, had requested a consultation with an adoption clinic to discuss surrendering their future child, and had reviewed potential families who might someday raise their son or daughter (collectively, the "Sensitive Information").

In its Motion to Dismiss, LifeLong concedes that it installed the Tracking Tools on its Website and does not dispute that it shared the most private facets of Plaintiffs' lives with the largest advertising companies in the world. Instead, LifeLong attempts to minimize its violation of Plaintiffs' privacy, recasting its disclosure of Plaintiffs' Sensitive Information as "standard website analytics," and even foisting its responsibilities onto Plaintiffs by arguing that because "it is common knowledge that website views and website interactions are recorded and shared with Google and Facebook," Plaintiffs should have simply assumed that LifeLong was collecting their Sensitive Information and selling it.[1]

However, as explained herein, LifeLong's Motion to Dismiss uniformly misrepresents both Plaintiffs' allegations and the applicable law and should be denied.

## II. FACTUAL BACKGROUND

### A. The Parties

LifeLong is an adoption clinic operating throughout the United States. ECF No. 19 [Amended Class Action Complaint] ("Complaint" or "FAC"), ¶ 8. Through its Website, expectant mothers can research information about its adoption services, request a consultation, initiate a telephone call, take a "Birthmother Quiz" to determine

[1] ECF No. 26 [Defendant's 12(B)(6) Motion to Dismiss Plaintiffs' First Amended Complaint and Memorandum in Support] ("Mot."), at 20:5, 42:2-12.

the ideal type of adoption for their circumstances, and even browse a directory of families looking to adopt a child. *Id*. Plaintiffs are women who used these web services in connection with an unplanned pregnancy. *Id*. ¶¶ 12-21.

**B. Google and Facebook's Tracking Tools**

Google and Facebook offer website operators access to their proprietary suites of marketing, advertising and customer analytics software. *Id.* ¶¶ 5-6. Armed with these programs, website operators can leverage Google and Facebook's enormous database of consumer information for the purposes of deploying targeted advertisements, performing minute analyses of their customer bases, and identifying new market segments that may be exploited. *Id*. But, in exchange for access to this software, website operators must install Google and Facebook's Tracking Tools on their website—third-party surveillance software that captures sensitive, personally identifiable information provided to the website operator by its users. *Id*. Google and Facebook then aggregate the user information that they collect from third-party websites into "advertising profiles" consisting of all of the data that they have collected about a given user. *Id.* ¶ 37. With these advertising profiles, Google and Facebook can sell hyper-precise advertising services, allowing their clients to target internet users based on combinations of their location, age, race, interests, hobbies, life events (e.g., recent marriages, graduation, or income, type of employment, use of specific apps or websites, and more). *Id*. Where an internet user has a Facebook or Google account, this information can be correlated to their identity through tracking cookies installed on the user's web browser. *Id*. ¶¶ 53-57.

**C. LifeLong's Use of the Tracking Tools**

LifeLong installed Google and Facebook's Tracking Tools on the Website. FAC ¶ 65. Then, LifeLong specifically chose to take the generic version of the Tracking Tools and configure them to convey almost any action taken by users of the Website.

*Id.* ¶ 72. While LifeLong argues that the information captured by its Tracking Tools is limited to URL information, in reality, the Tracking Tools are configured to intercept and relay precise actions taken by users of the Website. For example, as documented in the Complaint, the Tracking Tools on the Website are configured to inform Facebook and Google when Website users (1) fill out and submit the "Birth Mom Interest Form;" (2) initiate a phone call to "Get Info" related to being "Pregnant & Considering Adoption;" (3) download the "Ultimate Adoption Guide" by clicking a button labeled "I'm Pregnant;" (4) initiate the "Birthmother Communication Quiz;" and (5) convey that they are or are not interested in a potential adoptive family through the Website's "Family Finder" application. *Id.* ¶¶ 66-71, Figs. 1-10. Google and Facebook then process this Sensitive Information and compile it with information collected elsewhere online, ultimately allowing advertisers to use it for the purpose of targeted advertising. *Id*. ¶ 37.

Importantly, Plaintiffs never consented to LifeLong's use of the Tracking Tools. Indeed, LifeLong's Privacy Policy explicitly assures Website visitors that, "We will not share your information with any third party outside of our organization, other than as necessary to fulfill your request." *Id*. ¶ 74. In reality, LifeLong *does* share its users' Sensitive Information, thereby allowing third-parties like Google and Facebook to harvest the personally identifiable Sensitive Information directly tied to Website users in exchange for enhanced marketing and advertising services.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the burden of proof is on the movant, and the court draws all reasonable inferences in plaintiff's favor, assuming all well-pleaded factual allegations to be true and determining whether they plausibly give rise to an entitlement to relief. *See, e.g., Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337– 38 (9th Cir. 1996). A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement") (internal quotation marks omitted). Courts are instructed to freely grant leave to amend unless the defects identified could not possibly be cured. *See, e.g., Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## IV. <u>ARGUMENT</u>

### A. Plaintiff V.P.'s Claims are Not Barred by the Statute of Limitations.

It is axiomatic that "a cause of action accrues on the date of the injury...except as modified by the discovery rule." *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. App. 1994). "Under California's discovery rule, the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause." *Id.* Put differently, under the discovery rule, a statute of limitations begins to accrue when a reasonable person would have discovered the factual basis for a claim. *Broberg v. The Guardian Life Ins. Co. of America*, 90 Cal. Rptr. 3d 225, 231 (Cal. Ct. App. 2009). To satisfy this standard, Plaintiffs must sufficiently allege (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 U.S. Dist. LEXIS 124510, at *3 (N.D. Cal. Oct. 27, 2011) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920–21 (Cal. 2005)).

Courts analyzing the delayed discovery rule in the context of online tracking tools such as those at issue here have concluded that allegations that a defendant has secretly installed and prevented the discovery of tracking tools on its website are sufficient to toll the statute of limitations at the pleading stage. *See, e.g.*, *A.J. v. LMND Med. Grp., Inc.*, No. 23-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *1 (N.D. Cal. Oct. 25,

2024) (holding that delayed discovery rule tolled statute of limitations where defendant installed identical tracking technologies); *B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDx), 2024 U.S. Dist. LEXIS 18970, at *5 (C.D. Cal. Feb. 1, 2024) (same); *Doe v. Fullstory, Inc.*, 712 F.Supp.3d 1244, 1255-56 (N.D. Cal. 2024) (same). Additionally, where a plaintiff alleges that a defendant has intentionally hidden and misrepresented its website's practices, the plaintiff's claims are properly tolled. *See, e.g.*, *Brown v. Google, LLC*, 525 F.Supp.3d 1049, 1071 (N.D. Cal. 2021) (tolling claims where defendant's tracking methods were not apparent to users and its privacy policy failed to disclose the full scope of tracking).

Plaintiff V.P. alleges that the technological complexity and secrecy of LifeLong's Tracking Tools prevented her from discovering its disclosure of her Sensitive Information.[2] LifeLong contends that Plaintiff V.P. was put on notice regarding the dissemination of her private information because she began to see targeted ads after using the Website. *See* Mot. at 14. However, being targeted with ads does not mean that Plaintiff V.P. was aware of *how*, *to what extent*, or even *which website* was responsible for disseminating her private information to third parties. Indeed, it is extremely likely that a woman searching for an adoption clinic will make inquiries at many different clinics and so will be unable to connect an onslaught of targeted adoption-related advertising to any specific provider. Thus, Plaintiff V.P. properly pleads an "equitable exception to the running of the statute of limitations by alleging,

[2] *See, e.g.*, FAC ¶ 80 ("The Tracking Tools installed on Defendant's Website were invisible to Plaintiffs and Class Members. Without analyzing the network information transmitted by Defendant's Website through examination of its source code or the use of sophisticated web developer tools, there was no way for a Website user to discover the presence of the Tracking Tools"), ¶¶ 98-99 ("The Pixels and other tracking tools on Defendant's Website were and are invisible to the average website visitor…Through no fault or lack of diligence, Plaintiffs and Class Members were deceived and could not reasonably discover Defendant's deception and unlawful conduct"), ¶¶ 2, 38, 245-47 (alleging Tracking Tools were "hidden," and "surreptitious").

e.g., the discovery rule, equitable tolling, fraudulent concealment, continuous violation, or continuous accrual." *Gonzalez v. JP Morgan Chase Bank, N.A.*, No. C-14-2558 EMC, 2014 U.S. Dist. LEXIS 152674, at *13 (N.D. Cal. Oct. 28, 2014).

Moreover, LifeLong's argument is particularly flawed considering that it actively misrepresented its use of Plaintiff's Sensitive Information to Plaintiff. Specifically, LifeLong assures its Website users in its Privacy Policy that it "will not share your information with any third party outside of our organization, other than as necessary to fulfill your request." FAC ¶ 74. In reality, LifeLong provides unfettered access to Website visitors' Sensitive Information in exchange for enhanced advertising and marketing services from Facebook and Google. Plaintiff V.P. could not be on inquiry notice of a violation when LifeLong explicitly assured her that no such violation was occurring. *See Brown*, 525 F.Supp.3d at 1071 (tolling claims where defendant's tracking methods were not apparent to users and its privacy policy failed to disclose the full scope of tracking).

In short, LifeLong prevented Plaintiff V.P. from discovering her claim by both hiding its use of the Tracking Tools, and misrepresenting its data privacy practices. As such, the Court should find that Plaintiff V.P. is entitled to equitable tolling pursuant to the discovery rule, as numerous courts within this Circuit have found under analogous circumstances. *See, e.g.*, *Desert Care Network*, 2024 U.S. Dist. LEXIS 18970, at *5; *LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *1 (holding that delayed discovery rule tolled statute of limitations where defendant installed identical tracking technologies); *Fullstory*, 712 F.Supp.3d at 1255-56 (same).

**B. Plaintiffs' Privacy Claims are Meritorious.**

To state a claim for intrusion upon seclusion under California common law, "[p]laintiffs must show that: (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of

privacy,' and (2) that the intrusion was 'highly offensive' to a reasonable person." *Silver v. Stripe Inc.,* 2021 U.S. Dist. LEXIS 141090, *16 (N.D. Cal. July 28, 2021) (quoting *Hernandez v. Hillsides, Inc.,* 47 Cal 4th 272, 287, 97 Cal. Rptr. 3d 274, 211 P.3d 1063 (2009)). Likewise,

> [t]o state a claim for invasion of privacy under the California Constitution, Plaintiffs must show that '(1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.

*Doe v. Tenet Healthcare Corp*., 2025 U.S. Dist. LEXIS 109134, *48 (E.D. Cal June 9, 2025) (quoting *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 601 (9th Cir. 2020)). "Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d at 601. California courts are "generally hesitant" to decide privacy claims at the pleading stage. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022).

LifeLong does not dispute that Plaintiffs had a reasonable expectation of privacy in their Sensitive Information or that disclosure of that Sensitive Information would be highly offensive.[3] Rather, LifeLong only argues that Plaintiffs have failed to allege an

---

[3] Nor could it. LifeLong's disclosure of Plaintiffs' Sensitive Information was inarguably highly offensive. As the Complaint explains, "numerous studies have noted that feelings of intense shame are often experienced by mothers experiencing unintended pregnancy, particularly due to the intense social stigma attached in many communities." FAC ¶ 95. Indeed, this Court, like many others, has already recognized the privacy interest attached to Plaintiffs' Sensitive Information by granting their Motion to Proceed Pseudonymously. ECF No. 18; *see also* ECF No. 2, at § II(B) (collecting cases finding that pregnancy and childbirth are particularly sensitive, personal matters that should be held confidential).

"intrusion." Mot. at 15:24-16:20. This argument must fail.

The vast majority of courts applying California law have upheld claims for invasion of privacy in cases involving the same Tracking Tools as alleged by Plaintiffs.[4] LifeLong argues that, as it was a party to the communications at-issue, Plaintiffs' invasion of privacy claim must fail for want of an intrusion. Mot. 15:24-16:20. This argument misunderstands the applicable law. Even where a defendant is the intended recipient of the private information at-issue, California courts will still find an intrusion if the plaintiffs provided their private information to the defendant with an expectation that it would be kept confidential. For example, in *Lau v. Gen. Digit. Inc*., the court found that although the plaintiffs provided the defendant with access to their internet browsing data by downloading its software program, the defendant could not "escape liability [for invasion of privacy] by arguing that there is no 'intrusion'" because the plaintiffs "did not expect for [the program] to collect and store extensive dossiers of their browsing data that could later be sold to third-party advertisers." No. 22-cv-08981-RFL, 2024 U.S. Dist. LEXIS 81310, at *8 (N.D. Cal. Apr. 3, 2024). Accordingly, the court held that the complaint "plausibly allege[d] an intrusion based on the defendants' access to the plaintiffs' extensive private browsing data, which the plaintiffs would not have provided had they known that the defendants would allegedly store and share the data in contravention of their reasonable expectations." *Id*. at *11. Likewise in *Opperman v. Path, Inc.*, the plaintiffs downloaded the defendant's mobile phone

[4] *See, e.g.*, *Silver*, 2021 U.S. Dist. LEXIS 141090, at *15 ("plaintiffs' allegations that [defendant] compiled and disseminated plaintiffs' sensitive data precludes the Court from finding that plaintiffs have no reasonable expectation of privacy"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 801 (same); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023) ("*Cousin II*") ("the Court finds that their interactions on Defendant's website, while 'unauthenticated' or publicly facing, sufficient to plead invasion of privacy claims); *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (same); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *37 (N.D. Cal. Oct. 1, 2024) (same); *Fullstory*, 712 F. Supp. 3d at 1257 (same).

application and granted it access to their cellular address book. 87 F. Supp. 3d 1018, 1060 (N.D. Cal. 2014). The defendant subsequently collected information from plaintiffs' address books and used it for commercial purposes without plaintiffs' knowledge. *Id.* Accordingly, the court found that plaintiffs had pled a claim for intrusion upon seclusion because "[p]laintiffs alleg[ations] that their consent was obtained by fraud, and that their consent was therefore invalid" supported a finding that plaintiffs had "a reasonable expectation of privacy with respect to the address books copied by each app at issue." *Id.*[5]

This principle applies in equal force here. While LifeLong may have been the intended recipient of Plaintiffs' communications, Plaintiffs' communications with LifeLong were premised on the confidentiality of those communications. Indeed, Plaintiffs allege that they would not have provided their Sensitive Information to LifeLong had they known it would share that Sensitive Information with unauthorized third parties. FAC ¶¶ 168, 217; *see also* FAC ¶ 83 ("Because Plaintiffs and Class Members were not aware of the Google and Facebook Pixels on Defendant's website, or that their Sensitive Information would be collected and transmitted to Google and Facebook, they could not and did not consent to Defendant's conduct"). Accordingly, they have properly pled an intrusion.

LifeLong supports its argument with only one case from within this Circuit: *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525-WLH-E, 2025 U.S. Dist. LEXIS 83660 (C.D. Cal. Feb. 27, 2025). *Saedi* is an outlier. As noted above, the

[5] *See also Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1270 (9th Cir. 1998) (reversing grant of summary judgment for defendant employers on invasion of privacy claim where the plaintiff employees agreed to give blood and urine samples for an employment-related health exams without realizing that the defendants would conduct additional intrusive medical and genetic testing on those samples for syphilis, pregnancy, and sickle cell traits); *Sanchez-Scott v. Alza Pharm.*, 86 Cal. App. 4th 365, 103 Cal. Rptr. 2d 410, 419 (Ct. App. 2001) (reversing dismissal of intrusion upon seclusion claim where doctor allegedly obtained plaintiff's consent to a breast examination in front of a drug salesperson without disclosing the salesperson was not a medical professional).

vast majority of courts in this Circuit have found a cognizable invasion of privacy claim in matters arising out of a defendant's use of the Tracking Tools. Moreover, the *Saedi* plaintiffs did not argue, and the *Saedi* court consequently did not consider, the applicability of the consent and confidentiality principles elucidated in *Lau* and *Opperman*. Because *Saedi* relied on an incomplete recitation of California privacy law, the Court should decline to follow it and instead should rule in accordance with the clear majority of Ninth Circuit courts that have found an intrusion adequately alleged under similar circumstances.

### C. Plaintiffs' Breach of Confidence Claim is Well Pled

To state a claim for breach of confidence under California law, a plaintiff must allege that:

> (1) the plaintiff conveyed "confidential and novel information" to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding.

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997). Courts have found that allegations that a defendant disclosed information through Tracking Tools when it had a legal obligation to keep that information confidential is sufficient to maintain a claim for breach of confidence. *Toy v. Life Line Screening of Am. Ltd.*, No. 23-cv-04651-RFL, 2024 U.S. Dist. LEXIS 88872, at *8 (N.D. Cal. Mar. 19, 2024); *see also Desert Care Network*, 2024 U.S. Dist. LEXIS 18970, at *28 (breach of confidence claim based on Tracking Tool disclosure survived dismissal).

LifeLong argues that Plaintiffs have failed to satisfy all four elements of breach of confidence. None of its arguments are persuasive.

#### ***i. Plaintiffs' Sensitive Information was confidential.***

With no case support whatsoever, LifeLong attempts to argue that Plaintiffs' Sensitive Information is not confidential, characterizing it instead as "standard website analytics[.]" Mot. at 22:9. What LifeLong ignores is that the information it describes—that Plaintiffs clicked a link labeled *Pregnant and Considering Adoption? Get Info*; took the *Birthmother Communication Quiz* and vetted potential adoption families through the *Family Finder* application—reveals a highly confidential facet of Plaintiffs' lives: the fact that they were pregnant, that the pregnancy they were experiencing was an unplanned pregnancy, and that they were considering placing a child up for adoption. As the Complaint explains, "numerous studies have noted that feelings of intense shame are often experienced by mothers experiencing unintended pregnancy, particularly due to the intense social stigma attached in many communities." FAC ¶ 95. This Court concurred that such information merits confidentiality when it granted Plaintiffs' Motion to Proceed Pseudonymously. ECF No. 18. Indeed, it is quite difficult to imagine something more confidential than a woman's struggle with unintended pregnancy and the potential surrender of her child.

***ii. Both Plaintiffs and LifeLong understood that Plaintiffs' Sensitive Information was communicated in confidence.***

Plaintiffs adequately allege that both Parties understood that their Sensitive Information was communicated in confidence and to be kept confidential.

***First,*** as to themselves, Plaintiffs allege that that they had a reasonable expectation of privacy with regards to their Sensitive Information, and would not have provided their Sensitive Information to LifeLong had they known that it would be disclosed to unauthorized third parties. FAC ¶¶ 76, 168, 217. These allegations clearly establish Plaintiffs' good-faith and well-reasoned belief that information communicated to LifeLong would be kept in confidence.

***Second,*** LifeLong argues that Plaintiffs cannot rely on its Privacy Policy to support their breach of confidence allegations because they "do not plead that they read or understood the policy before or while using LifeLong's website." Mot. at 23:14-15. But, even assuming *arguendo* that Plaintiffs had not read the Privacy Policy, the Privacy Policy still demonstrates LifeLong's understanding of ***its own*** obligations with regards to Plaintiffs' information. *See In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 948 (N.D. Cal. 2022) (finding that the defendant's Terms of Service and other policies established its understanding that plaintiffs' information was to be kept confidential). LifeLong's Privacy Policy promises Website users that, "We will not share your information with any third party outside of our organization, other than as necessary to fulfill your request." FAC ¶ 74. Clearly, LifeLong understood that its Website users' information was sensitive enough to merit confidentiality.

Thus, as Plaintiffs properly allege that (1) they conveyed confidential information to LifeLong, and that (2) both Parties understood that information was to be kept in confidence, LifeLong's Motion to Dismiss should be denied as to Plaintiffs' breach of confidence claim.

**D. Plaintiffs' Negligence Claim is Well-Pled.**

***i. LifeLong had a duty to protect Plaintiffs' Sensitive Information.***

Under California law, there is a "statutory presumption of duty." *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136 (2018). "This rule is codified in Section 1714 of the Civil Code, which provides: 'Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person.'" *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1016 (N.D. Cal. 2024) (quoting Cal. Civ. Code § 1714). LifeLong offers no rationale for why the Court should depart from this rule. Indeed, numerous courts have concluded that website operators have a duty to

protect sensitive information collected from users under analogous circumstances. *See In re Facebook, Inc.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (holding that website operator has "a responsibility to handle its users' sensitive information with care"); *Vishal Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1046 (N.D. Cal. 2025) ("Defendant's alleged lack of reasonable care in handling Plaintiffs' personal information caused foreseeable harm to Plaintiffs…Plaintiffs therefore alleged a valid duty of care by alleging that they placed trust in Defendant to protect their personal information, which Defendant the [*sic*] disclosed.").

***ii. Plaintiffs allege cognizable damages.***

LifeLong makes no argument pertaining to Plaintiffs' privacy injuries, presumably because such injuries are indisputably recognized under California law. Indeed, "the detriment the plaintiffs suffered was an invasion of their privacy." *In re Facebook, Inc.*, 402 F. Supp. 3d at 802 (finding that an invasion of privacy constitutes damages under California law).[6] Privacy injuries, like those suffered by Plaintiffs, are a compensable form of damages where a plaintiff's sensitive information is disclosed by the defendant's negligence. *See Id.*; *Doe v. N. Cal. Fertility Med. Ctr.*, No. 22-cv-01861-DAD-JDP, 2024 U.S. Dist. LEXIS 12175, at *13 (E.D. Cal. Jan. 22, 2024) ("the court concludes that plaintiff has sufficiently alleged a privacy injury arising from the negligent disclosure of her [health information]"); *Toy*, 2024 U.S. Dist. LEXIS 88872, at *12 ("non-economic privacy injury [is] traditionally recognized under the law"); *LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *9 ("privacy injuries stemming from [defendant's use of Tracking Tools] suffice to survive a motion to dismiss").

[6] *See also* FAC ¶ 10 ("As a result of Defendant's conduct, Plaintiffs and Class Members have suffered numerous injuries, including: (i) invasion of privacy"), ¶ 77 ("By engaging in this improper sharing of information without Plaintiffs' and Class Members' consent, Defendant breached Plaintiffs' and Class Members' right to privacy").

***iii. Causation***

LifeLong argues that "Plaintiffs have not plausibly alleged sufficient facts to conclude that the conclusory assertions of harm were the result of anything but Google and Facebook's default tracking tools." Mot. 26:27-27:1. Not so. In their Complaint, Plaintiffs allege that:In their default state, Google and Facebook's Pixels record and transmit only "automatic events," consisting largely of routine user behavior, such as clicking a link, clicking on an advertisement, or viewing a webpage. However, the Google and Facebook's Pixels used on Defendant's Website are not in their default state. Defendant intentionally configured the Google and Facebook Pixels on its Website to collect and transmit additional user data, including transmitting when Website users' initiate a call from the Website, or their specific selections in the "Family Finder" application.

FAC ¶ 72; *see also* § IV(F)(iii), *infra* (discussing the configuration of LifeLong's Tracking Tools). But, even absent these allegations, Plaintiffs still satisfy the causation element, as their privacy injuries were proximately caused by LifeLong's decision to install the Tracking Tools onto its Website, regardless of whether those disclosures required additional configuration to be effectuated.

Because Plaintiffs properly allege that LifeLong breached its duty to maintain the confidentiality of their Sensitive Information, and that such violations caused them to

suffer injuries to their privacy, LifeLong's Motion to Dismiss should be denied as to Plaintiffs' negligence claim.

**E. Plaintiffs' Unjust Enrichment Claim is Well-Pled.**

To state a claim for unjust enrichment, Plaintiff must allege that LifeLong received and unjustly retained a benefit at their expense. *See ESG Capital Partners, Ltd. P'ship v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). District courts in the Ninth Circuit routinely allow unjust enrichment claims to proceed in pixel and data misuse cases like this one. *See, e.g.*, *Fullstory*, 712 F. Supp. 3d (denying dismissal of unjust enrichment claim in a Meta Pixel action alleging misuse of personally identifiable information); *C.M. v. MarinHealth Med. Grp., Inc.*, No. 23-cv-04179-WHO, 2024 U.S. Dist. LEXIS 10189, att *15 (N.D. Cal. Jan. 19, 2024) (similar); *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023 U.S. Dist. LEXIS 178369, at *6 (N.D. Cal. Oct. 3, 2023) (holding that plaintiffs sufficiently pleaded facts to establish unjust enrichment where plaintiffs would not have visited defendant's websites with surreptitiously installed tracking technologies that conferred a benefit to defendant at the expense of plaintiffs' privacy).

Moreover, the Ninth Circuit has held that a plaintiff is entitled to disgorgement of unjustly earned profits regardless of whether a defendant's actions "caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the Plaintiffs' property to become less valuable." *In re Facebook Inc. Internet Tracking Litig*, 956 F.3d at 600; *see also Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 815 (N.D. Cal. 2011) (recognizing plaintiff whose information was misappropriated by Facebook "may properly seek restitution"); *In re Anthem Inc. Data Breach Litig.*, 2016 U.S. Dist. LEXIS 70594, at *14 (N.D. Cal. May 27, 2016) (finding that plaintiffs' personal information was stolen in a data breach and thus lost value, which constituted an injury to plaintiffs); *In re Yahoo! Inc. Customer Data Sec. Breach*

*Litig.*, 2017 U.S. Dist. LEXIS 140212, *13-14 (N.D. Cal. Aug. 30, 2017) (same).

Here, Plaintiffs allege that the Sensitive Information that LifeLong disclosed to unauthorized third parties includes health information that holds particularly high value, and that this monetary benefit was conferred upon LifeLong by Plaintiffs. FAC ¶¶ 84-91. This value is not speculative. Plaintiffs allege that LifeLong "received compensation in the form of advanced advertising services and cost-effective marketing on third-party platforms in exchange for allowing Google and Facebook to collect Plaintiffs' and Class Members' Sensitive Information." *Id.* ¶ 85. The fact that Plaintiffs' Sensitive Information was exchanged for valuable marketing services inarguably establishes that they provided something of value to LifeLong. Therefore, Plaintiffs have adequately alleged a claim for unjust enrichment.

### F. Plaintiffs' Electronic Communications Privacy Act ("ECPA") Claim is Well-Pled.

#### *i. Plaintiffs allege that LifeLong had a criminal and tortious purpose in intercepting their communications.*

A claim exists under the ECPA where a defendant intentionally uses or discloses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(c)-(d). Where, like here, the defendant is a party to the communication, liability may still be established through the "crime-tort exception" if the defendant's interception is "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Plaintiffs have satisfied the crime-tort exception by alleging that LifeLong's Tracking Tools disclosure of their Sensitive Information to unauthorized third parties constitutes numerous violations of both statutory and common law, as explained *infra* and *supra*.

LifeLong attempts to evade this conclusion by arguing that "Plaintiffs have failed to allege any facts to support independently illegal or actionable conduct beyond the

interception itself." Mot. at 33:3-6. Not so. Plaintiffs do not allege that LifeLong violated the law by ***intercepting*** their communications made through the Website. Rather, Plaintiffs allege that LifeLong's legal violations result from ***disclosing*** the intercepted communications to unauthorized third parties. As one court explains, this theory of liability conforms with the text of the ECPA and has been endorsed by the Ninth Circuit:

> In setting forth the crime-tort exception, the Wiretap Act expressly distinguishes between the interception of communications and a separate criminal or tortious purpose by providing that the communication must be '*intercepted* for the purpose of committing any criminal or tortious act.' The Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose.
>
> The Ninth Circuit has favorably cited a Second Circuit decision that states, 'if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act.' The Court concludes that alleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception.

*Castillo v. Costco Wholesale Corp.*, No. 2:23-cv-01548-JHC, 2024 U.S. Dist. LEXIS 207197, at *18-19 (W.D. Wash. Nov. 14, 2024) (holding that disclosure of sensitive information through the same Facebook Tracking Tools at-issue in this case satisfies

ECPA crime-tort exception). Numerous courts concur.[7] Thus, Plaintiffs' allegations that LifeLong criminally and tortiously disclosed their Sensitive Information to Google and Facebook satisfy the crime-tort exception of the ECPA.

***ii. LifeLong's tortious purpose is not negated by its financial motive.***

LifeLong additionally argues that Plaintiffs cannot satisfy the crime-tort exception because its "alleged purpose for using the tracking tools was financially motivated." Mot. at 34:1. This argument is "difficult to square with the statutory text" of the ECPA as the "language of the statute gives no hint that conduct falls outside the reach of the statute if a person acted based on financial motivations." *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273, at *14 (N.D. Ill. Feb. 21, 2025). One court helpfully illustrates the flaws in LifeLong's reasoning with a few useful hypotheticals:

> A person can have a purpose of committing an act that is criminal or tortious, without having a criminal or tortious purpose. Imagine changing lanes on the highway without looking, and nailing the car in the other lane. The bad driver may have acted with the purpose of committing an act — changing lanes — that was tortious (because of the lack of ordinary care). But that's different than saying that

[7] *See R.S. v. Prime Healthcare Servs*., No. 5:24-cv-00330-ODW (SPx), 2025 U.S. Dist. LEXIS 6338, at *20 (C.D. Cal. Jan. 13, 2025) (crime-tort exception satisfied where defendant intercepted and unlawfully disclosed sensitive information with third parties through Tracking Tools installed on website); *B.K. v. Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497, at *4 (C.D. Cal. Apr. 11, 2024) (same); *Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515, at *23 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 (D. Minn. 2024) (same); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) (same); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515, at *13 (S.D.N.Y. Sep. 16, 2024) (same); *Kurowski v. Rush Sys. for Health* ("*Rush III*"), No. 22 C 5380, 2023 U.S. Dist. LEXIS 219895, at *8 (N.D. Ill. Dec. 11, 2023) (same).

the driver acted with a tortious purpose.

The other reading would, in effect, import a *mens rea* element into the statute. Congress could have required a showing that the person acted with a criminal or tortious purpose. The text could have covered intercepting a communication 'for a criminal or tortious purpose.' Or, the statute could have applied to intercepting a communication 'for a criminal or tortious purpose to commit a criminal or tortious act.'

But that's not what the text says. The 'act' must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious.

Even if the carve-out required a criminal or tortious purpose, it would be odd to exclude an otherwise criminal or tortious act solely because it was also motivated by financial gain. The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime — it was to make money.

*Id.* at *14-16.[8] Indeed, it is hard to imagine any scenario wherein a company commits an unlawful act simply for the sake of breaking the law. In the vast majority of cases, corporations that commit tortious acts have a financial motive: to obtain wealth through fraud, to cut costs by negligently ignoring business regulations or industry standards, to avoid the expenditure associated with a costly contractual provision. This case is no different. When LifeLong installed the Tracking Tools on its Website and configured them to intercept the Sensitive Information of users like Plaintiffs, its purpose was to share the intercepted Sensitive Information with unauthorized third parties. In other words, its purpose was to commit unlawful acts: disclosure of Sensitive Information in violation of the common law and statutory prohibitions alleged in the Complaint. That LifeLong did so to receive compensation for the disclosed Sensitive Information has no bearing on its liability under the ECPA.

***iii. The Sensitive Information alleged by Plaintiffs is not record information.***

Plaintiffs properly allege that LifeLong disclosed the contents of their communications through the Website to Google and Facebook. The ECPA defines "contents" as including "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). LifeLong incorrectly asserts that the Sensitive Information alleged by Plaintiffs constitutes the non-contents "record information" described in *In re Zynga Privacy Litigation*. Mot. at 35:4-36:24 (citing

[8] *See also Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *20 (allegations that defendant installed and configured Tracking Tools in violation of applicable statute sufficient to state ECPA claim); *Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497, at *4 (same); *Cooper*, 742 F. Supp. 3d at 380 (same); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *14 (same); *Kane*, 2024 U.S. Dist. LEXIS 48515, at *21 (same); *Aspen Dental Mgmt., Inc.*, 2024 U.S. Dist. LEXIS 161090, at *3 (same); *Rush III*, 2023 U.S. Dist. LEXIS 219895, at *3 (same); *Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *7 (same); *Mayer*, 2025 U.S. Dist. LEXIS 60486 (N.D. Ill. Mar. 31, 2025) (same); *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 C 5891, 2024 U.S. Dist. LEXIS 78517 (N.D. Ill. Apr. 30, 2024) (same); *Mekhail*, 726 F. Supp. 3d at 928 (same).

750 F. 3d 1098, 1108 (9th Cir. 2014)). But *Zynga* draws an important distinction: while URLs that merely show the webpages visited by a website user are indeed record information, transmissions that indicate a specific action taken by a website user, such as a search term input into a search box, represent the contents of the user's communications with the website operator. *Zynga*, 750 F. 3d at 1107-09; *see also Castillo*, 2024 U.S. Dist. LEXIS 207197, at *15.

The transmissions alleged by Plaintiffs reveal the contents of their communications with LifeLong. LifeLong incorrectly asserts that the Sensitive Information alleged by Plaintiffs solely consists of "webpage views and user IDs." Mot. at 35:17. On the contrary, in the Complaint, Plaintiffs allege (and the images inserted in the Complaint show) that the Tracking Tools inform Google and Facebook of a myriad of actions taken by users, including that the Website user has (1) filled out and submitted the "Birth Mom Interest Form;" (2) initiated a phone call to "Get Info" related to being "Pregnant & Considering Adoption;" (3) downloaded the "Ultimate Adoption Guide" by clicking a button labeled "I'm Pregnant;" (4) initiated the "Birthmother Communication Quiz;" and (5) conveyed that they were or were not interested in a potential adoptive family through the Website's "Family Finder" application. FAC ¶¶ 66-71, Figs. 1-10. This information is categorically not the "referrer header information" that *Zynga* classified as "record information," which instead consists of "the address of the webpage from which the user's HTTP request to view another webpage was sent." *Zynga*, 750 F.3d at 1107. Rather, the transmissions alleged by Plaintiffs conveyed not merely the webpages they visited, but also the specific actions

that they took on the Website through activation of corresponding "event" triggers.[9] When Plaintiffs initiated telephone calls to a designated informational line for expectant mothers, clicked buttons labeled "I'm Pregnant," took the "Birthmother Communication Quiz," and screened potential adoptive families through the Family Finder tool, LifeLong informed Google and Facebook of these actions through its use of the Tracking Tools. Those transmissions fully conveyed the "substance, purport, or meaning" of Plaintiffs' communications with LifeLong: that they were pregnant, that they were exploring placing their future child up for adoption, and that they had turned to LifeLong for help doing so. 18 U.S.C. § 2510(8).

### G. Plaintiff V.P.'s Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") Claim is Well Pled.

Under WESCA, any person whose wire or electronic communication is intercepted, disclosed or used in violation of its provisions is granted a private right of action against the person who intercepted, disclosed or used the communication, or who procured another person to do the same. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. 2022) (citing 18 Pa. C.S. § 5725(a)). Interception and disclosure of Sensitive Information *via* Tracking Tools constitutes a violation of WESCA. *See Braun v. Phila. Inquirer, LLC.*, No. 22-cv-4185-JMY, 2023 U.S. Dist. LEXIS 202528, at *14 (E.D. Pa. Nov. 13, 2023); *Howard v. Lab'y Corp. of Am.*, No. 1:23-CV-00758, 2024 U.S. Dist. LEXIS 174067, at *21 (M.D.N.C. Aug. 8, 2024).

---

[9] Google and Facebook's Tracking Tools collect certain information, such as the URLs of the webpages visited on a tracked website, by default. But website operators can also configure the Tracking Tools to record specific "events"—such as specific buttons clicked by a user, the information the user enters into an online form, documents downloaded by the user, or the applications initiated by the user (e.g., a telephone application launched by hitting a "Call Us Now" link). *See* FAC ¶ 72, n. 47. As explained in this section, Plaintiffs' Complaint documents numerous such event triggers that have been configured on the Website. These events, which convey the specific actions taken by the user on the Website, are distinct from mere URL header information.

LifeLong argues that Plaintiff V.P.'s WESCA claim fails because LifeLong is based in Illinois rather than in Pennsylvania. Mot. at 40:20-22. But the same Third Circuit case that LifeLong cites in support of its argument forecloses upon this conclusion. In *Popa v. Harriet Carter Gifts*, the Third Circuit found that the defendant "intercepted [the plaintiff's communications at the point where it routed those communications to its own servers. And that ***was at [the plaintiff]'s browser, not where the signals were received at [the defendant]'s servers.***" 52 F.4th at 131 (emphasis added); *see also Arndt v. Gov't Emps. Ins. Co.*, 750 F. Supp. 3d 518, 525 (D. Md. 2024) (*accord*). This conclusion makes good sense. The Tracking Tools at-issue automatically intercepted and transmitted the Sensitive Information communicated by Plaintiff V.P. when she connected her internet browser to the Website, as well as cookie identifiers collected from the Google and Facebook cookies present on her browser. FAC ¶¶ 52-57, 64-73. Accordingly, the site of the interception was the location of Plaintiff V.P.'s browser, her home in Pennsylvania. *See Luis v. Zang*, 833 F.3d 619, 633 (6th Cir. 2016) (finding under Ohio wiretap statute that the "alleged intercept of a communication thus occurs at the point where [the Tracking Tool]—without any active input from the user—captures the communication and reroutes it to [defendant]'s own servers"—i.e., at the location of the browser); *Popa*, 52 F.4th at 131 (3d Cir. 2022).[10]

***Second***, LifeLong alleges that because Plaintiff V.P. may have been generally aware that internet activity can be tracked, she should have known that her Sensitive

[10] LifeLong attempts to rebut this conclusion by citing *Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667, *12 (M.D. Pa. Feb. 14, 2025). But *Post Acute Med.* merely found that the plaintiff had "include[d] sufficient factual material to support the plausible inference that the intercept happened in Pennsylvania, where defendants maintain their respective principal places of business, and not Ohio, where he accessed the webpage." *Id*. The *Post Acute Med* court also cautioned that its possible for an interception to occur in more than one location. *Id*. To the extent that LifeLong argues that *Post Acute Med.* holds that the site of LifeLong's interceptions through the Tracking Tools must be its headquarters (and only its headquarters), its argument is unavailing and misrepresents *Post Acute Med.*'s ruling.

Information would be disclosed to third parties by LifeLong and therefore, the Court should find that she consented to LifeLong's interception and disclosure of her Sensitive Information. Mot at 41:18-42:12. LifeLong cites no cases in support of this argument, nor could it. While Plaintiff V.P. may now be aware that many website operators use the Tracking Tools by virtue of this action, the Complaint includes no allegations that Plaintiff V.P. had any such knowledge at the time she visited the Website. This alone is fatal to LifeLong's argument. But even if Plaintiff V.P. did have general knowledge that such Tracking Tools exist, it does not follow that she would have therefore known that LifeLong specifically was using those Tracking Tools, let alone how any Tracking Tools used by LifeLong functioned or what information they were collecting. As shown in the Complaint, analysis of Tracking Tool behavior is highly technical and well beyond the ability of a layperson. *See* FAC ¶¶ 64-73, 80. Additionally (and crucially), Plaintiff V.P.'s consent to LifeLong's specific use of such Tracking Tools surely cannot be inferred when LifeLong falsely represented that it would not share her information with any third party outside of its organization for purposes other than providing her with her requested services in its Privacy Policy. *See* FAC ¶ 74.

**H. Plaintiff E.H,'s California Invasion of Privacy Act ("CIPA") Claim is Well-Pled.**

Section 631(a) of the CIPA consists of four clauses, each providing an independent cause of action:

> (1) where a person 'by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection…with any telegraph or telephone wire, line, cable, or instrument';

> (2) where a person 'willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit';
>
> (3) where a person 'uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained'; and
>
> (4) where a person 'aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.'

*Javier v. Assurance IQ LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023) (*quoting* Cal. Penal Code § 631(a)). Plaintiff successfully alleges claims under the first clause of Section 631(a) by alleging that LifeLong directly violated CIPA; and under the fourth clause of Section 631(a) by pleading that (1) LifeLong aided and abetted Facebook and Google's interception of their communications with it, in violation of the second clause of Section 631(a), and (2) aided and abetted Facebook's use, or attempted use, of their communications in violation of the third clause of Section 631(a).

***i. Plaintiff alleges a direct violation of CIPA.***

As to LifeLong's direct violation of CIPA, LifeLong's argument that it was a party to the relevant communications fails for the same reasons it failed regarding Plaintiffs' ECPA claim. As LifeLong concedes, courts analyze claims under CIPA and

ECPA using the same framework because the statutes contain similar provisions protecting against unauthorized interception of communications. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797 (using same analysis for CIPA and ECPA claims). "Under both the ECPA and CIPA, '[i]t shall not be unlawful ... for a person ... to intercept a[n] electronic communication where such person is a party to the communication,' so long as such interception is not 'for the purpose of committing any criminal or tortious act.'" *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024); *see also Marden v. LMND Med. Grp., Inc.*, No. 23-cv-03288-RFL, 2024 U.S. Dist. LEXIS 132292, at *4 (N.D. Cal. July 3, 2024) (holding that where ECPA claim survives due to application of crime-tort exception, CIPA claim must also survive for the same reasons). Accordingly, the party exception does not apply to Plaintiff's CIPA claim.

***ii. Plaintiff plausibly alleges that LifeLong aided and abetted Facebook and Google.***

Section 631(a)(4) of CIPA provides a cause of action "where a person 'aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.'" *Javier*, 649 F. Supp. 3d at 897 (quoting Cal. Penal Code § 631(a)). To assert a violation of CIPA based on derivative liability, a plaintiff must allege facts showing a third party's predicate violation of clause (i), (ii), or (iii) of Section 631(a). It is sufficient for a plaintiff to allege a defendant intentionally procured the Tracking Tools and installed them on its website in order to satisfy this requirement. *See M.G. v. Therapymatch*, Inc., No. 23-cv-04422-AMO, 2024 U.S. Dist. LEXIS 166534, at *5 (N.D. Cal. Sep. 16, 2024) (allegations that defendant "knowingly agreed to use Google Analytics," "embedded tracking technology code on its website," and "allowed Google to have direct access to [its users' private information]" sufficient to show aiding and abetting under the CIPA).

Here, Plaintiffs allege that LifeLong installed Tracking Tools on its Website and that those Tracking Tools disclosed Plaintiff's Sensitive Information to Facebook and Google. FAC ¶¶ 4-9, 64-73. Plaintiff further alleges that LifeLong "received compensation in the form of advanced advertising services and cost-effective marketing on third-party platforms in exchange for allowing Google and Facebook to collect Plaintiffs' and Class Members' Sensitive Information." *Id.* ¶ 84. These allegations are sufficient to establish that LifeLong aided and abetted Facebook and Google in collecting Private Information for their advertising enterprise. *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *8 (allegations that defendant chose to install Facebook pixel and Facebook Pixel transmitted medical information to Facebook are sufficient to show aiding and abetting).

***iii. The Sensitive Information alleged by Plaintiff E.H. constitutes the "contents" of her communications with LifeLong.***

LifeLong additionally repeats its argument that its disclosures of Plaintiffs' Sensitive Information constitutes "record information." Mot. at 45:5-13. This argument fails for the reasons stated in § IV(F)(iii), *supra*.

## V. CONCLUSION

For the aforementioned reasons, this Honorable Court should **DENY** LifeLong's Motion to Dismiss.[11]

[11] Plaintiffs do not dispute LifeLong's arguments as to their claims for Breach of Fiduciary Duty; Breach of Implied Contract; violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq*.

Dated: August 18, 2025

Respectfully submitted,

/s/ Sonjay C. Singh
Sonjay C. Singh (*pro hac vice*)
Tyler J. Bean*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: tbean@sirillp.com
E: ssingh@sirillp.com

Catherine E. Ybarra (SBN # 283360)
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Ste. 1000
Los Angeles, CA 90017
Telephone: (213) 297-3807
cybarra@sirillp.com

**pro hac vice forthcoming*

***Attorneys for Plaintiffs and the Class***