UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

E.H. and V.P., on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

LIFELONG ADOPTIONS, INC.,

Defendant.

Case No. 1:25-cv-00441-JLT-BAM

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Hon. Judge Jennifer L. Thurston

Magistrate Barbara A. McAuliffe

Luke K. Chamberlain (SBN 358896)
MESSER STRICKLER BURNETTE, LTD.
142 W. Station Street
Barrington, IL 60010
Telephone: (312) 334-3469
lchamberlain@messerstrickler.com

*Counsel for Defendant –*
*LifeLong Adoptions, Inc.*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ 3
ARGUMENT ........ 6
I. STATUTES OF LIMITATION BAR MAJORITY OF V.P.'S CLAIMS. ........ 6
II. THE INTRUSION UPON SECLUSION AND CONSTITUTIONAL PRIVACY CLAIMS FAIL FOR LACK OF INTRUSION. ........ 9
III. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A CLAIM FOR BREACH OF CONFIDENCE. ........ 12
IV. NEGLIGENCE CLAIM NOT PLAUSIBLY PLED. ........ 14
V. UNJUST ENRICHMENT ALLEGATIONS FAIL. ........ 16
VI. ALLEGATIONS DO NOT SUPPORT CRIME-TORT EXCEPTION. ........ 19
VII. ALLEGATIONS DO NOT PLAUSIBLY SUPPORT WESCA CLAIM. ........ 25
VIII. CIPA CLAIM FAILS FOR SAME REASONS AS ECPA CLAIM. ........ 27
CONCLUSION ........ 29

## TABLE OF AUTHORITIES

### Cases

*A.J. v. LMND Med. Grp.* 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) .................... 7

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) .............................................. 25

*B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024).......... 12, 21

*B.K. v. Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497 (C.D. Cal. April 11, 2024) ........... 21

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................................................... 28

*C.M. v. MarinHealth Medical Group, Inc.*, 2024 U.S. Dist. LEXIS 10189 (N.D. Cal. Jan. 19, 2024) ........................................................................................................................ 15

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010) .............................................................................. 22

*Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ........................................................................................................................ 20, 21

*Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sept. 14, 2016) ....... 13

*Commonwealth v. Byrd*, 661, Pa. 85 (2020) ................................................................................... 25

*Cooper v. Mount Sinae Health Sys., Inc.*, 742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........................ 21

*Deteresa v. American Broad Cos.*, 121 F.3d 460 (9th Cir. 1997)................................................. 19

*Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..................................................... 15

*Doe v. Kaisesr Found. Health Plan, Inc.*, 2024 U.S. Dist. LEXIS 66733 (N.D. Cal. Apr. 11, 2024) ........................................................................................................................ 22

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211 (9th Cir. 1997) ................... 12

*Federal Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333 (2008) .......................................... 17

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005) .......................................................... 5

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................. 16

*Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024) ...................... 21

*In re Anthem Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, (N.D. Cal. May 27, 2016)........ 16

*In re Facebook Inc. Internet Tracking Litig*, 956 F.3d 589 (9th Cir. 2020) .................................. 16

*In re Facebook, Inc.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019)........................................................ 13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, (N.D. Cal. Aug. 30, 2017) ................................................................................................................................ 16

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ............................................................ 27

*Javier v. Assur. IQ LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) .................................................. 5

*Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024)............... 21

*Katz-Lacabe v. Oracle America, Inc.*, 2023 U.S. Dist. LEXIS 178369 (N.D. Cal. Oct. 3, 2023). 15

*King v. Hard Rock Café Int'l (USA), Inc.*, 2025 U.S. Dist. LEXIS 109123 (E.D. Cal. June 9th) .. 27

*Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023) ...... 21

*Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025) ............................................ 20, 24

*Lau v. Gen. Digit. Inc.*, 2024 U.S. Dist. LEXIS 81310 (N.D. Cal. Apr. 3, 2024) .......................... 8

*Leick v. Harford Life & Accident Ins. Co.*, 2008 U.S. Dist. LEXIS 80975 (E.D. Cal. Apr. 23, 2008) ..................................................................................................................................... 21

*MarinHealth Medical Group, Inc.*, 2024 U.S. Dist. LEXIS 10189 .............................................. 15

*Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916 (D. Minn. 2024) .................................. 21

*Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833 (S.D. Cal. 2024) .................................. 27

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021)............................. 25

*Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 U.S. Dist. LEXIS 38654 (W.D. Wash. Mar. 4, 2025) ....................................................................................................................................... 22, 24

*Okash v. Essentia Health*, 2024 U.S. Dist. LEXIS 53126 (D. Minn. Mar. 26, 2024) .................. 22

*Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014).................................................... 9

*Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125 (9th Cir. 2022) ........ 18, 20, 22

*Popa v. Microsoft Corporation*, 2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025)............ 10

*R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025)............ 20

*Raifman v. Wachovia Securities*, 649 F. Appx. 611 (9th Cir. 2016)............................................... 6

*Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 U.S. Dist. LEXIS 83660 (C.D. Cal. Feb. 27, 2025) ........................................................................................................................ 7, 18

*Shahnaz Zarif v. Hwareh.com, Inc.*, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 12, 2025) .... 23

*Sinclair v. City of Seattle*, 61 F.4th 674 (9th Cir. 2023) ............................................................ 21

*Smith v. Facebook*, 745 Fed. Appx. 8 (9th Cir. 2018) ................................................................ 13

*Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200 (9th Cir. 1999) .............................. 18, 24

*Toy v. Life Line Screening of Am. Ltd.*, 2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024) ........................................................................................................................................ 12

*Vishal Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025)......................... 13

*Weston v. Lefiti*, 2024 U.S. App. LEXIS 27181 (9th Cir. Oct. 25, 2024)..................................... 23

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021)......................... 27

**STATUTES**

18 Pa. C.S. § 5704(4) ................................................................................................................. 39

18 Pa. C.S. § 5725(a) ................................................................................................................. 38

18 U.S.C. § 2511 ........................................................................................................................ 29

18 U.S.C. § 2511(2)(d)................................................................................................................. 29

18 U.S.C. § 2520(e) .................................................................................................................... 11

73 Pa. C.S. § 201-9.2 .................................................................................................................. 41

Cal. Bus. & Prof. Code § 17204 ................................................................................................. 34

Cal. Civ. Code § 1621 ................................................................................................................. 25

Cal. Civ. Proc. Code § 339(1) ...................................................................................................... 11

Defendant LifeLong Adoptions, Inc. ("LifeLong"), by and through its undersigned counsel, hereby replies to the response in opposition filed by Plaintiffs E.H. and V.P. (collectively, "Plaintiffs") to LifeLong's Rule 12(b)(6) Motion to Dismiss the First Amended Complaint as follows:

## ARGUMENT

As Plaintiffs concede LifeLong's arguments as they pertain to the alleged breach of fiduciary duty, breach of implied contract, and violations of the California Unfair Competition Law and Pennsylvania Unfair Trade Practice and Consumer Protection Law, this Court should dismiss these claims. *See* ECF #31 at p. 35, n.11. Moreover, having failed to persuasively refute LifeLong's arguments as to their remaining claims, the remaining claims should similarly be dismissed.

### I. STATUTES OF LIMITATION BAR MAJORITY OF V.P.'S CLAIMS.

As suspected, V.P. attempts to defend her time-barred claims by claiming the discovery rule delayed accrual. As even she recognizes, however, in order to invoke the discovery rule, "a plaintiff must plead facts to show '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Javier v. Assur. IQ LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)); ECF #31 at p. 12. Here, not only does V.P. fail to allege the time and manner of her discovery nor facts to support she acted diligently to discover the source of her claimed injury,[1] V.P. specifically alleges she "***immediately*** began seeing targeted online advertisements for adoption services, further ***confirming*** that her Sensitive Information had been shared with unauthorized third parties." ECF #19 at ¶21 (emphasis added). While V.P. attempts to downplay this allegation, she cannot erase its implications – V.P. had inquiry notice "immediately" after accessing LifeLong's website

[1] Notably, Plaintiffs did not add such allegations when amending their complaint despite being on notice, via LifeLong's original motion to dismiss, that the absence of such allegations dooms any reliance on the discovery rule. *See* ECF #13 at p. 14.

"confirming" that an injury was wrongfully caused.[2] *Javier*, 649 F. Supp. 3d at 901 ("A plaintiff has inquiry notice 'when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.'") (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988)).

Importantly, under the discovery rule, the statute of limitations is only delayed until "the plaintiff suspects or should suspect that her injury was caused by wrongdoing[.]" *Jolly*, 44 Cal. at 1110. Because Plaintiffs themselves contend the ads they saw *confirmed* their information was shared with unauthorized third parties, the clock started then. Moreover, although V.P. posits that she could not possibly have known the specific facts surrounding sharing at that time, that is not the standard:

> A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

*Id.* In other words, once V.P. suspected wrongdoing, it was incumbent on her, under the law, to investigate "***all*** potential causes of that injury."[3] *Raifman v. Wachovia Securities*, 649 F. Appx. 611, 613 (9th Cir. 2016) (quoting *Fox*, 35 Cal. 4th at 808) (emphasis added). V.P.'s failure to timely investigate the injury now bars her claims.[4]

---

[2] Plaintiffs disingenuously contend that LifeLong concedes that it installed the Tracking Tools and impermissibly shared information with third parties. *See* ECF #31 at p. 9. That is simply not true. For purposes of LifeLong's motion to dismiss, well-pled facts are accepted as true, but that does not equate to a concession by LifeLong that such allegations are *in fact* true. As Plaintiffs' counsel knows or *should* know, a motion to dismiss is not the proper stage to lodge a factual challenge. Thus, no such factual challenge is raised by LifeLong at this stage.

[3] And as such, V.P.'s excuse now that the ads *hypothetically* could have been caused by other generic searches is insufficient to overcome the time-bar.

[4] Plaintiffs' reference to the website privacy policy is also nothing more than a red herring. First, Plaintiffs do not allege what the privacy policy stated in May of 2022, when V.P. allegedly visited LifeLong's website. Nor do Plaintiffs allege they read the policy before using the website. To the contrary, their allegations imply they did not. *See* ECF #19 at ¶44. Lastly, even if Plaintiffs had reviewed the policy before using the website **and** it stated that their information would not be shared, Plaintiffs still by their own allegations had reason

The case law cited by V.P. does not change this result. In fact, all of her cited cases are distinguishable, as none involved the critical admission at issue here that the advertisements "confirm[ed]" unauthorized sharing. The cases are also distinguishable for additional reasons. For instance, in *B.K. v. Dessert Care Network*, the Complaint lacked detail on its face as to when the website interactions occurred making defendant's time-bar argument unsuitable for a Rule 12(b)(6) motion. *See* 2024 U.S. Dist. LEXIS 18970, *11 (C.D. Cal. Feb. 1, 2024). That is not the case here given the specific timeline alleged. Next, in *A.J. v. LMND Med. Grp.*, the plaintiff was found to have adequately pled the time and manner of discovery as well as an inability to make an earlier discovery of the claims despite reasonable diligence. *See* 2024 U.S. Dist. LEXIS 194480, *2 (N.D. Cal. Oct. 25, 2024). Such allegations are not present here, despite Plaintiffs acknowledging they must "sufficiently allege" the same. *See* ECF #31 at p. 12. Lastly in *Doe v. Fullstory, Inc.*, the allegations centered on there being "no indication" of sharing so as to provide users with inquiry notice, in contrast to here where indicators are specifically alleged. 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024). Put simply, *Saedi*, cited by LifeLong, is far more persuasive as it involves substantively identical allegations and claims. *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 U.S. Dist. LEXIS 83660, *27 (C.D. Cal. Feb. 27, 2025) (finding plaintiff "surely had inquiry notice when she began seeing ads").

Plaintiffs' reliance on *Brown* is also misplaced and cannot save V.P.'s claims as *Brown* involved allegations supporting fraudulent concealment. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1070 (N.D. Cal. 2021). A "plaintiff bears the burden of pleading fraudulent concealment . . . . with particularity." *Id.* To plead fraudulent concealment, a plaintiff must allege among other things that she did not have constructive knowledge of the facts giving rise to the claim and that

to suspect LifeLong shared their information in violation of the policy when they "immediately" began seeing advertisements.

she acted diligently in trying to uncover the facts giving rise to the claim. *Id.* Once again, not only does V.P. fail to allege facts to support she acted diligently, she specifically alleges cause to believe in May 2022 that LifeLong shared information regarding her website visit. Thus, for the same reason V.P. has not established entitlement to the discovery rule, she has not plausibly alleged fraudulent concealment.

## II. THE INTRUSION UPON SECLUSION AND CONSTITUTIONAL PRIVACY CLAIMS FAIL FOR LACK OF INTRUSION.

Plaintiffs' Opposition[5] fails to persuasively rebut LifeLong's arguments for dismissal of the privacy claims. In their Opposition, Plaintiffs' principal argument for intrusion rests on their contention that "California courts will still find an intrusion if the plaintiffs provided their private information to the defendant with an expectation that it will be kept confidential." ECF #31 at p. 16. In support, Plaintiffs cite two district court cases, each of which is inapposite. Plaintiffs first cite to *Lau v. Gen. Digit. Inc.*, 2024 U.S. Dist. LEXIS 81310 (N.D. Cal. Apr. 3, 2024). In that case, the plaintiffs pled an intrusion claim against a company whose product was marketed as "helping protect" users' privacy when browsing the internet. *Id.* at *7. The product was advertised as "having many 'privacy features,' including 'Anti-tracking - prevent tracking on every website you visit' and 'Global Privacy Control - stop web companies from collecting and selling your personal data.'" *Id.* at *7-8. Despite this, the product in fact collected, stored, and subsequently sold vast amounts of user data, including "internet search engine keyword searches, search results, email inbox searches, browsing histories, video viewing histories, and [protected health information]." *Id.* at *8. In addressing whether an intrusion occurred, the Court concluded it had because "[a]lthough the

[5] Plaintiffs contend that "LifeLong does not dispute that Plaintiffs had a reasonable expectation of privacy in their Sensitive Information or that the disclosure of that Sensitive Information would be highly offensive." *Opposition* at 8. As discussed in Section I, *supra*, this is disingenuous. For purposes of LifeLong's motion to dismiss, well-pled facts are accepted as true, but that does not equate to a concession by LifeLong that such allegations are in fact true.

plaintiffs may have expected their browsing data to *pass through* [defendant's software product]" they allegedly never intended or expected defendant "to *collect and store* extensive dossiers of their browsing data" and it was this retention which intruded upon the plaintiffs' privacy. *Id.* at *10-11 (emphasis added).

*Lau* concerns substantially different circumstances than the case at bar. Here, Plaintiffs' interactions with LifeLong's website were clearly intended to be shared with LifeLong. Indeed, Plaintiffs do not allege a single interaction that did not specifically involve LifeLong as an intended recipient. In contrast, in *Lau*, it was allegedly never intended or expected that defendants would receive and store the communications. In other words, in *Lau*, the allegations reflected that defendant intruded beyond what was willingly provided. Additionally, in *Lau* the nature and volume of collected information was substantially different and far more comprehensive. In the instant action, Plaintiffs allege LifeLong tracked only basic information regarding the website features Plaintiffs interacted with. Plaintiffs make no plausible argument as to how, nor cite alleged facts to support, they had a reasonable expectation of privacy in such interactions, or how the alleged disclosure of such basic information could constitute "an egregious breach of social norms. Fore these reasons, *Lau* is simply inapt for comparison to this action.

*Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014), also cited by Plaintiffs, is similar to *Lau*. In *Opperman*, the plaintiffs plausibly alleged that while they intended defendant's application to "scan" their smartphone address books, defendant's application "surreptitiously" copied and retained the plaintiffs' address books thereby intruding into areas not reasonably expected. *Id.* at 1058-1059. In allowing the intrusion claim to proceed, the court concluded that any consent to defendant's party status was obtained through fraud thereby invalidating their consent. *Id.* at 1060.

Again, the circumstances described in *Opperman* are nothing like the instant action. Here, only basic data surrounding Plaintiffs interactions with LifeLong's website are at issue and there are no allegations that LifeLong induced Plaintiffs to interact with the website through fraud. Plaintiffs' attempt to make the connection by claiming that their interactions were premised on the confidentiality of those communications (ECF #31 at p. 17), but as explained *supra*, they have not alleged any facts to plausibly suggest that they had a reasonable expectation of privacy in the data at issue.[6] Here, there is no dispute that LifeLong was "the intended recipient of Plaintiffs' communications," Plaintiffs acknowledge as much. *See* ECF #31 at p. 17. Having failed to allege any facts to support that those communications were not provided willingly to LifeLong, they have not plausibly alleged any intrusion by LifeLong so as to support the privacy claims.[7]

It is also worth noting that following the filing of LifeLong's motion, the Ninth Circuit decided *Popa v. Microsoft Corporation*, 2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025). *Popa* concerned remarkably similar circumstances to the instant action. There, the plaintiff's lawsuit concerned website tracking tools which captured user interactions on a particular website, including mouse movements, clicks, and browsing activity. Like the case at bar, the tracking tools allegedly captured basic information about the plaintiff's website interactions, such as the products she viewed. In concluding that plaintiff lacked Article III standing to sue in federal court, the Circuit Court analyzed the offered "common law analogue" of a privacy intrusion tort and rejected the same as demonstrable of a concrete harm.[8]

---

[6] As argued in Section VII, *infra*, the information allegedly collected by LifeLong does not even constitute communication content.

[7] The additional cases cited by Plaintiffs (*Silver*, *Meta Pixel*, *Cousin*, *Regents of the Univ. of Cal.*, *St. Aubin*, *Fullstory*) fare no better in persuasively arguing against LifeLong's motion, as none addressed the challenge posed here – i.e. that there can be no intrusion where the defendant was intended to receive the communications. Moreover, in *Cousin* it was subsequently determined that the Court lacked jurisdiction and as such the cited opinion amounts to nothing more than an impermissible advisory opinion. *See Cousin v. Sharp Healthcare*, 2024 U.S. Dist. 48697 (S.D. Cal. Mar. 18, 2024).

[8] LifeLong reserves the right to challenge Plaintiffs' Article III standing to sue on a later date based on the

In concluding that the plaintiff's "intrusion" comparison was unpersuasive, the *Popa* court determined that plaintiff had failed to identify any "embarrassing, invasive, or otherwise private information collected by" the defendant from the simple tracking of her interactions with a public website. *Id.* at *16. The Circuit Court acknowledged the *possibility* that "[defendant's] tracking software could be offensive in particular circumstances (e.g., involving sensitive medical or financial information)" but the infringement of such privacy interests were not plausibly alleged. *Id.* at *17. A similar conclusion is warranted here in that Plaintiffs allege only that LifeLong collected and subsequently disclosed basic information regarding their interactions with LifeLong's website. *See, e.g.*, ECF #19 at ¶¶66, 67, 68, 70, 71, 72. There are no allegations that LifeLong collected the type of sensitive information traditionally protected by California law (e.g. confidential medical or financial information).

In summary, Plaintiffs' Opposition fails to persuasively argue they have plausibly alleged an intrusion, let alone a "highly offensive" intrusion.[9] Accordingly, Plaintiffs' privacy claims should be dismissed.

## III. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A CLAIM FOR BREACH OF CONFIDENCE.

Plaintiffs' Opposition also fails to overcome the deficiencies LifeLong identified in the breach of confidence claim. First, as LifeLong explained in its moving brief: "[t]he breach of confidence tort is based upon the 'concept of an implied obligation or contract between the parties

---

*Popa* opinion.

[9] Plaintiffs' contention that the Court's granting their Motion to Proceed Pseudonymously is conclusive that the tracked information is sensitive and confidential is unpersuasive. Apart from the Motion to Proceed Pseudonymously involving no merits analysis, the two issues are quite different. Unless allowed to proceed pseudonymously Plaintiffs would be publicizing that they *in fact* experienced unwanted pregnancies and considered surrendering their child, facts which they contend they do not wish to publicize. In contrast, mere interactions with a public website do not establish *as fact* Plaintiffs' own state of health or intentions. *See Smith v. Facebook*, 745 Fed. Appx. 8, 9 (9th Cir. 2018) (characterizing "a person's browsing history and his or her own state of health" as "tenuous").

that confidential information will not be disclosed.'" *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1226-27 (9th Cir. 1997) (construing California law). Plaintiffs have since abandoned their "breach of implied contract" cause of action, thereby casting significant doubt at the outset on the fundamental viability of their breach of confidence claim.

Next, while it is true that "[c]ourts have found that allegations that a defendant disclosed information through Tracking Tools when it had a **legal obligation** to keep that information confidential is sufficient to maintain a claim for breach of confidence" such cases, namely *Toy* and *Desert Care Network* cited by Plaintiffs, are inapposite and cannot save their claim here. *See* ECF #31 at p. 18 (emphasis added) (citing *Toy v. Life Line Screening of Am. Ltd.*, 2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024); *B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024)). Indeed, both *Toy* and *Desert Care Network* concerned the alleged collection and dissemination of highly sensitive and legally protected[10] medical information. Neither case bears any resemblance to the instant action. Far from alleging the collection and dissemination of protected medical information, Plaintiffs merely allege the disclosure of basic information pertaining to their interactions with a public website. This is not the type of information protected by case law and statute with which the courts were concerned in *Toy* and *Desert Care Network*. Accordingly, Plaintiffs' appeal to these cases is simply unavailing.

Plaintiffs also contend that they satisfied the first element of a breach of confidence claim because they "conveyed" by their interactions with the website that they were *in fact*: (1) pregnant; (2) experiencing an unplanned pregnancy; and (3) considering adoption. Plaintiffs' argument assumes too much. Mere interactions with a public website do not, as argued *supra*, establish as fact, the state of health or intentions of the user. *See Smith v. Facebook*, 745 Fed. Appx. 8, 9 (9th

---

[10] *Desert Care Network*, at *25 (Patients' right to privacy in their medical records "is well-settled;" "It is a right that is protected by case law as well as state and federal statutes and regulations.") (internal citations omitted).

Cir. 2018) (characterizing "a person's browsing history and his or her own state of health" as "tenuous"). And because Plaintiffs have not plausibly alleged that they "conveyed" "confidential information" to LifeLong, they have not stated a *prima facie* claim for breach of confidence.

Moreover, while Plaintiffs make much of LifeLong's alleged privacy policy in seeking to support their breach of confidence claim, again, they failed to allege both the terms of the policy at the time they visited the website AND that they read the privacy policy before using the website. Absent such critical allegations, Plaintiffs simply have not demonstrated any "understanding" between the parties so as to support the breach of confidence claim.

In sum, Plaintiffs fail to plausibly allege any of the threshold elements of a claim for breach of confidence. Accordingly, Count II of Plaintiff's First Amended Complaint must be dismissed.

## IV. NEGLIGENCE CLAIM NOT PLAUSIBLY PLED.

In its moving brief, LifeLong explained how it is insufficient for Plaintiffs to simply "aver that a defendant owed them a duty of care." *Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428, *7-8 (N.D. Cal. Sept. 14, 2016). In opposition, Plaintiffs allege no facts and cite no privacy statutes or standards to support their conclusion that LifeLong has a common-law duty to protect the basic information alleged to have been collected and shared in this case. For this reason alone, their negligence claim should be dismissed.

In seeking to manufacture such a duty, Plaintiffs analogize to the decisions in *In re Facebook, Inc.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) and *Vishal Shah v. Capital One Fin. Corp*., 768 F. Supp. 3d 1033 (N.D. Cal. 2025). As with their other causes of action, Plaintiffs again conflate the information alleged to have been shared in this case with the kind of highly sensitive personal identifying and financial information that has been traditionally viewed as protectable. In *In re Facebook*, the court permitted a negligence claim to proceed when Facebook was alleged to have shared "substantive and revealing content that users intended only for a limited audience,"

including users' "photographs, videos they made, videos they watched, their religious and political views, their relationship information, and the actual words contained in their messages." 402 F. Supp. 3d at 776. Likewise, the court in *Vishal Shah* allowed a negligence claim to proceed where Capital One was alleged to have collected and shared sensitive personal and financial information, such as individuals' employment information, bank account information, citizenship status, credit card approval and eligibility, existing user status, and credit card application status. 768 F. Supp. 3d at 1041.

When determining whether a valid duty exists, California courts turn to several factors, including the foreseeability of harm to the plaintiff. In both *In re Facebook* and *Vishal Shah*, the courts concluded that plaintiffs had adequately pled that the defendants had a responsibility to handle its users' sensitive information with care given the sensitive nature of the data and resulting foreseeable harm if shared. 402 F. Supp. 3d at 800; 768 F. Supp. 3d at 1046. The instant action in contrast does not concern the type of sensitive information at the center of *In re Facebook* or *Vishal Shah*. Rather, LifeLong is alleged to have catalogued and shared records of users' basic interactions with various features on a public website. *See* ECF #19 at ¶¶66, 67, 68, 70, 71, 72. Plaintiffs cite no authority where courts have determined that the collection and sharing of comparable information rises to the level of "sensitive" or "personal" information creating a foreseeable risk of harm and corresponding duty of care.

Nor have Plaintiffs plausibly alleged cognizable damages. Rather, Plaintiffs' damages allegations consist of threadbare, conclusory assertions of "emotional distress" (ECF #19 at ¶¶10, 192.a, 207) and that they "suffer[d] damages by having their highly personal, personally identifiable Sensitive Information accessed, stored, and disseminated without their knowledge or consent." *Id.* at ¶151. As discussed *supra*, Plaintiffs have failed to allege the data allegedly shared was "highly personal" or "sensitive." And as such, they have failed to plausibly allege they suffered any harm

as a result of the alleged sharing. Moreover, even in the context of cases involving protected medical information as cited by Plaintiffs, negligence claims have been dismissed for lack of plausible damages. *See e.g.*, *C.M. v. MarinHealth Medical Group, Inc.*, 2024 U.S. Dist. LEXIS 10189, *5 (N.D. Cal. Jan. 19, 2024). Despite this, Plaintiffs ask this Court to conclude *as a matter of law* that damages are the natural result of sharing the basic, limited interaction data at issue here. Such a request has no basis in the very cases cited by them.

**V. UNJUST ENRICHMENT ALLEGATIONS FAIL.**

Plaintiffs' unjust enrichment cause of action suffers from the same defects as several of the other alleged causes of action. Specifically, Plaintiffs conflate the type of information at issue in this action with the sensitive, protectable information at the center of other data-sharing or data-misuse cases.

Plaintiffs' Opposition cites multiple "pixel" and "data misuse" cases where courts have permitted unjust enrichment claims to proceed. *See* ECF #31 at p. 23 (citing *Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024); *MarinHealth Medical Group, Inc.*, 2024 U.S. Dist. LEXIS 10189; *Katz-Lacabe v. Oracle America, Inc.*, 2023 U.S. Dist. LEXIS 178369 (N.D. Cal. Oct. 3, 2023)). As an initial matter both the *Fullstory* and *MarinHealth* cases cited included no substantive analysis of the unjust enrichment claims and are thus, not persuasive for that reason alone. Moreover, in *Fullstory*, the defendant was alleged to have collected and shared sensitive personal and medical information such as users' "names, email addresses, dates of birth, places of residence, payment information, health insurance information, health data and other highly sensitive information, including prescription information, answers to health questions, medication information, allergies, age, and weight." 712 F. Supp. 3d at 1252. *MarinHealth* likewise concerned collection and sharing of personally identifiable and protected health information. 2024 U.S. Dist. LEXIS at *5. *Katz-Lacabe* in turn concerned the defendant's alleged collection of vast amounts of

information regarding the plaintiffs' online and real-world lives, including financial data, comprehensive web-browsing profiles, and real-world location information. *Katz-Lacabe*, at *3, 18. In analyzing the unjust enrichment claim, the court in *Katz-Lacabe* determined that in view of the sweeping and highly personal nature of the information the defendant had allegedly collected and sold, the plaintiffs plausibly alleged that they had conferred a benefit on the defendant at the expense of their privacy and had therefore "done just enough for their unjust enrichment cause of action under California law to survive." *Id.* at *18.

The same cannot be said of the basic interaction data at issue in this case. Far from sweeping, comprehensive internet profiles or protected healthcare and/or financial information, the information allegedly collected and shared in this case bears no resemblance to the information at the center of data-sharing cases where courts have recognized property interests and permitted unjust enrichment claims to survive the pleading stage.

The remainder of Plaintiffs' Opposition on the unjust enrichment claim consists of additional citations to cases that concerned plainly disanalogous allegations of data misuse. *See e.g.*, *In re Facebook Inc. Internet Tracking Litig*, 956 F.3d 589, 596-97 (9th Cir. 2020) (involving Facebook's alleged tracking of logged-out users' comprehensive browsing histories to compile personal profiles to be sold to advertisers); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 790 (N.D. Cal. 2011) (involving Facebook's alleged collection of plaintiffs' names, photographs, likenesses, and identities for use in paid advertisements without consent); *In re Anthem Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, (N.D. Cal. May 27, 2016) at *89 (involving data breach that included plaintiffs' "extensive individually identifiable health record information"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, (N.D. Cal. Aug. 30, 2017) at *31 (involving data breach that included plaintiffs' records such as credit cards, retail accounts, banking, account passwords, IRS documents, and social security numbers).

Though Plaintiffs are correct that the courts in *In re Facebook* and *Farley* held that a plaintiff whose information was misappropriated may seek restitution remedies via claims like unjust enrichment, these cases are not comparable to the instant action. In both cases, again, at issue were large swaths of specific personal information regarding individual users, including their identities, private messages, and logged-out browsing histories. 956 F.3d 589, 596-97; 830 F. Supp. 2d 785, 790 . As discussed at length throughout this briefing, this conduct is nothing like what has been alleged in the instant action. Likewise, in the data breach cases (*In re Anthem* and *In re Yahoo!*) the courts concluded that the highly sensitive nature of the misappropriated data had clear pecuniary value such that unjust enrichment claims should be permitted to proceed. 2016 U.S. Dist. LEXIS 70594, at *14; 2017 U.S. Dist. LEXIS 140212, *13-14.

In contrast, the instant action concerns no personal identifying information, financial or healthcare information, or other highly sensitive information over which Plaintiffs had an inherent right of control. Rather, Plaintiffs' allegations concern records of their voluntary interactions with LifeLong's public website features. Plaintiffs provide no precedent to substantiate their contentions that LifeLong's sharing of this kind of information results in a diminution of value to Plaintiffs' personal property sufficient to support a claim for unjust enrichment.

Plaintiffs also do not address LifeLong's argument that there must be a reasonable expectation of payment. Essentially, under a quasi-contract theory, restitution is warranted if there is a reasonable expectation of payment despite no express agreement. It is not the mere fact that one receives a benefit from another, rather restitution is "only" required "if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." *Federal Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 347 (2008). None of the circumstances alleged here support that Plaintiffs had a reasonable expectation of payment, that

Lifelong should have reasonably expected to pay for the information at issue and/or that society would expect Lifelong to do so.

For the reasons discussed above, Plaintiffs' Complaint fails to plausibly allege the threshold elements of an unjust enrichment claim that: (1) LifeLong unjustly retained a benefit; (2) at Plaintiffs' expense. Far from sensitive personal or protected information, this case concerns basic website interaction data. Plaintiffs' mere characterization of this data as "health information" with value does not make it so. *See Smith*, 745 Fed. Appx. at 9 (characterizing "a person's browsing history and his or her own state of health" as "tenuous"). Accordingly, Plaintiff has not demonstrated that the information allegedly shared can plausibly form the basis of a claim for unjust enrichment.

## VI. ALLEGATIONS DO NOT SUPPORT CRIME-TORT EXCEPTION.

To save their Electronic Communications Privacy Act ("ECPA") claim, Plaintiffs rely on the crime-tort exception to the one-party consent rule. As Plaintiffs acknowledge, however, for the crime-tort exception to apply, a plaintiff must plausibly allege that the criminal or tortious purpose "is independent of the interception itself." *Saedi*, 2025 U.S. Dist. LEXIS 83660 at *34; ECF #31 at p. 24-25. An intercepted communication "has a criminal or tortious purpose under § 2511 when "done for the purpose of facilitating some ***further impropriety***, such as blackmail.'" *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135 (9th Cir. 2022) (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)) (emphasis added). "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception – its intended use – was criminal or tortious." *Sussman*, 186 F.3d at 1202 (internal quotation marks omitted) (emphasis added).[11]

[11] To the extent that *Stein*, cited by Plaintiffs (*see* ECF #31 at p. 26-27), suggests a criminal or tortious purpose need not be shown, *Stein* conflicts with binding Ninth Circuit precedent. *See Sussman*, 186 F.3d at 1202; *see also Weston v. Lefiti*, 2024 U.S. App. LEXIS 27181, *5 (9th Cir. Oct. 25, 2024) ("[Plaintiff's]

With this understanding it is clear that Plaintiffs alleged privacy invasion (even if plausibly alleged) cannot serve as the tortious purpose required by § 2511. Here, similar to the plaintiff in *Sussman*, Plaintiffs do not allege that the interception was carried out "for the purpose of committing some ***other subsequent*** crime or tort." *Sussman*, 186 F.3d at 1202 (emphasis added). Rather, Plaintiffs point only to Google and Facebook's Tracking Tools – the means of interception, as being tortious: First, by alleging that the means of interception[12] was Google and Facebook's Tracking Tools (e.g. Pixels) which allowed Google and Facebook to "intercept in real-time the content of" their communications with LifeLong. *Id.* at ¶¶5, 30, 35, 180-81, 238, 243. And next, by alleging that it was these Tracking Tools which invaded their privacy, not some separate, subsequent disclosure of communications. *Id.* at ¶¶123, 134, 195. By specifically alleging that it was the Tracking Tools themselves which constituted an intentional intrusion on Plaintiffs and the putative class's solitude (and/or violated other laws), Plaintiffs run afoul of the requirement that the criminal or tortious purpose be independent of and separate from the means of interception. Consequently, Plaintiffs as a matter of law "must seek redress elsewhere." *Sussman*, 186 F.3d at 1202-03.

Put simply, "only if" an interception is facilitated "for the purpose of" committing a criminal or tortious act can it violate § 2511 of the ECPA. *See Deteresa v. American Broad Cos.*, 121 F.3d 460, 467 (9th Cir. 1997) (finding defendant was entitled to "judgment as a matter of law" where record was devoid of any support that plaintiff's conversation was intercepted for the purpose of committing a crime or tort). Here, Plaintiffs rely on the alleged invasion of privacy as their primary support for the crime-tort exception. *See* ECF #19 at ¶¶185, 197. Even if the alleged interception

---

failure to adequately allege a criminal or tortious purpose is fatal to his interception claim.").

[12] As Plaintiffs recognize, "interception" is defined as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device[.]" *See* ECF #19 at ¶123 (quoting 18 U.S.C. 2510(4)).

constituted a tortious invasion of privacy under state law, for their ECPA claim to survive dismissal, Plaintiffs must still allege facts to plausibly support that Lifelong facilitated the interception "for the purpose of invading [their] privacy[.]" *Deteresa*, 121 F.3d at 467 n.4; *Sussman*, 186 F.3d at 1203. Similarly to the extent Plaintiffs base the crime-tort exception on an alternative common law or statutory violation,[13] Plaintiffs must allege facts to plausibly support that the interception was committed for the purpose of violating those laws. Plaintiffs include no such allegations of fact here. To the contrary, Plaintiffs allege that their communications were intercepted for the *specific* purpose of "financial gain" – a non-criminal, non-tortious purpose. *See* ECF #19 at ¶193. By alleging no facts to support that Lifelong "plan[ned] to use" the alleged intercepted communications "to harm" them, Plaintiffs have failed by their very own recitation of the law to plausibly allege the crime-tort exception applies. *See* ECF #31 at p. 25 (quoting *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, *18-19 (W.D. Wash. Nov. 14, 2024)).

The cases cited by Plaintiffs do not persuasively suggest otherwise as each focused on violations of the Health Insurance Portability and Accountability Act ("HIPAA"). *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057-58 (N.D. Cal. 2025) (rejecting persuasive value of exact same HIPAA cases in concluding plaintiffs "failed to meet their burden to show that the crime-tort exception applies"). Starting with *R.S. v. Prime Healthcare Servs.*, the plaintiff alleged that: (1) the intercepted information was protected under HIPAA, (2) defendant was aware that disclosing the intercepted information violated HIPAA, and (3) that defendant intentionally disclosed the intercepted information to third parties in violation of HIPAA, specifically, § 1320d-6 – which makes it a crime for "covered entities" to knowingly disclose individually identifiable health information to a third person. 2025 U.S. Dist. LEXIS 6338, *12-15 (C.D. Cal. Jan. 13, 2025); 42

[13] The crime-tort exception cannot be premised on alleged violations of a mirroring State law, such as CIPA or WESCA, as they proscribe the same conduct as the ECPA and the "focus is not upon whether the interception itself violated another law." *Weston v. LeFiti*, 2023 U.S. Dist. LEXIS 217227, *10-11 (S.D. Cal. Dec. 5, 2023) (quoting *Sussman*, 186 F.3d at 1203), *aff'd* 2024 U.S. App. LEXIS 27181.

U.S.C. § 1320d-6. Similarly, *Castillo*, *B.K.*, *Kane*, *Mekhail*, *Cooper*, *Gay*, and *Kurowski* all involved an alleged violation of § 1320d-6 for purposes of invoking the crime-tort exception and allegations that defendants *knowingly* and *intentionally* disclosed HIPAA protected information to third parties. *See Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, *21 (W.D. Wash. Nov. 14, 2024); *B.K. v. Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497, *8-9 (C.D. Cal. April 11, 2024);[14] *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, *23 (W.D.N.Y. Mar. 19, 2024); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 (D. Minn. 2024); *Cooper v. Mount Sinae Health Sys., Inc.*, 742 F. Supp. 3d 369, 379-380 (S.D.N.Y. 2024); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, *8-14 (S.D.N.Y. Sept. 16, 2024); *Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895, *6-8 (N.D. Ill. Dec. 11, 2023).

Conversely here, Plaintiffs by their own allegations rely on the alleged intrusion upon seclusion claim to satisfy the crime-tort exception, not an intentional disclosure in violation of HIPAA.[15] As the *R.S. v. Prime Healthcare Servs.* court itself recognized in contrasting such

---

[14] Contrary to Plaintiffs assertions, however, the *B.K. v. Eisenhower Med. Ctr.* court did not find the crime-tort exception to be satisfied in that case because the allegations were far too vague to allow an inference that the information purportedly shared was protected under HIPAA. *See* 2024 U.S. Dist. LEXIS 67497 at *10 ("Plaintiffs fail to persuade the Court that the poorly pleaded allegations in their Complaint satisfy the requirements of the crime-tort exception.").

[15] Indeed, nowhere in Plaintiffs' Amended Complaint nor Response brief do Plaintiffs contend the crime-tort exception is premised on a HIPAA violation. While Plaintiffs do include a singular extemporaneous, conclusory allegation in their Amended Complaint that LifeLong's conduct violated § 1320d-6, that cannot sustain the crime-tort exception here for multiple reasons. *See* ECF #19 at ¶189. First, "[c]onclusory allegations cannot defeat a motion to dismiss." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). Second, Plaintiffs have not and cannot allege facts showing LifeLong is a covered entity subject to HIPAA. *See* 42 U.S.C. § 1320d-1 (HIPAA applies to health plans, health care clearinghouses, and health care providers); *Leick v. Harford Life & Accident Ins. Co.*, 2008 U.S. Dist. LEXIS 80975, 15 (E.D. Cal. Apr. 23, 2008) (HIPAA disclosure requirements apply only to "covered entities" comprised of health plans, clearinghouses and providers). Third, Plaintiffs have not plausibly alleged that any individually identifiable health information ("IIHI") was shared. *See B.K*, 2024 U.S. Dist. LEXIS 67497 at *9-10 (holding HIPAA could not serve as basis for crime-tort exception where plaintiffs had not alleged sufficient facts to support inference IIHI was disclosed). Nor could they, considering IIHI by definition is information "created or received by a health care provider, health plan, employer, or health care clearinghouse[.]" 42 U.S.C. § 1320(d)(6). Any contention IIHI was shared is also foreclosed by *Smith*. *See Smith*, 745 Fed. Appx. at 9 ("The district court also properly rejected Plaintiffs' claims that the collected [browsing] data [from various healthcare-related websites] is subject to more stringent requirements under [HIPAA] . . . . Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records

allegations -- intrusion upon seclusion by its very nature can never serve as the basis for the statutorily required tortious intent. *Id.* at *16-17 (citing *Caro v. Weintraub*, 618 F.3d 94, 101 (2d Cir. 2010)). The reasoning being that nothing more is required beyond the interception to attach liability under an intrusion upon seclusion theory and thus the "requirement of a separate and independent tortious" purpose can never be satisfied on the basis of the intrusion alone. *Caro*, 618 F.3d at 101. Stated differently, an alleged intrusion does not suggest or support that an interception was done "for the purpose of facilitating some further impropriety, such as blackmail." *Planned Parenthood*, 51 F.4th at 1135. Per the reasoning of the cases cited by Plaintiffs, a HIPAA violation, in contrast, requires a *knowing disclosure* of protected information to third parties, and thus inherently requires a showing of criminal intent secondary to and independent of the interception.[16] *Prime Healthcare*, U.S. Dist. LEXIS 6338 at *12-13.

Moreover, while Plaintiffs cite case law to support that an interception also motivated by financial gain does not necessarily lack a criminal or a tortious purpose, that cannot save Plaintiffs' ECPA claim here. Even *if* criminal/tortious intent need not be plausibly pled as the *primary* motivation, the fatal flaw in Plaintiffs' ECPA claim remains that there is not a *single* allegation of fact to support a criminal or tortious purpose for the interception whatsoever. *See Weston v. Lefiti*,

---

and medical histories protected by [HIPAA] – information that unequivocally provides a window into an individual's personal medical history. Put simply, the connection between a person's browsing history and his or her own state of health is too tenuous to support Plaintiffs' contention that the disclosure requirements of HIPAA . . . apply.") (internal citations omitted).

[16] *Cf. Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 U.S. Dist. LEXIS 38654, *37 (W.D. Wash. Mar. 4, 2025) (rejecting plaintiff's argument that HIPAA allegations on their own overcame requirement that plaintiff allege a tortious or criminal use of the acquired communications separate from their interception); *Doe v. Kaisesr Found. Health Plan, Inc.*, 2024 U.S. Dist. LEXIS 66733, *27-28 (N.D. Cal. Apr. 11, 2024) (holding that alleged violation of HIPAA did not satisfy crime-tort exception because violating HIPAA was not the purpose of the interception and the act of interception itself cannot be the crime or the tort); *Okash v. Essentia Health*, 2024 U.S. Dist. LEXIS 53126, *12 (D. Minn. Mar. 26, 2024) (reasoning that allegations that defendant "violated HIPAA and privacy torts encompass only the simultaneous interception and disclosure of information" and thus do "do not suggest the interception was undertaken to further an independent criminal or tortious act" so as to overcome the one-party consent exception).

2024 U.S. App. LEXIS 27181, *4-5 (9th Cir. Oct. 25, 2024) (finding failure "to adequately allege that the interception was done for the purpose of facilitating some further impropriety, such as blackmail" to be "fatal" to ECPA claim) (internal quotation marks omitted).[17] Indeed, the Amended Complaint in no way suggests that the purpose for the interception was to harm Plaintiffs and/or perpetuate crimes or torts on website users. Rather, the well-pled facts point only to a non-criminal, non-tortious purpose -- financial gain, and thus fail to trigger the crime-tort exception. *See* ECF #19 at ¶193 (alleging LifeLong "intentionally" and "specifically" used the Tracking Tools "for financial gain"); *Shahnaz Zarif v. Hwareh.com, Inc.*, 2025 U.S. Dist. LEXIS 26519, *25 (S.D. Cal. Feb. 12, 2025) (finding allegations "insufficient to implicate the crime-tort exception" where Complaint's factual allegations did not address the purpose of defendant's interceptions apart from targeted advertising).

In conclusion, in the absence of allegations of fact to support that LifeLong carried out the interception "for the purpose of facilitating some *further impropriety*" Plaintiffs have not plausibly alleged that the interception had a criminal or tortious purpose independent of the interception as necessary to satisfy the crime-tort exception. Here, Plaintiffs argue that the simultaneous *disclosure* of the alleged website interactions to Google and Facebook constituted the criminal and/or tortious purpose.[18] "Arguments in an opposition, however, are not enough." *Shahnaz Zarif*, 2025 U.S. Dist. LEXIS 26519 at *25. There must be allegations of fact to support that LifeLong's purpose or

[17] In *Weston*, the plaintiff made only bare allegations that the purpose for the recording was the extortion of money and intentional interference with business relationships. *Weston*, 2023 U.S. Dist. LEXIS 217227 at *9 *aff'd* 2024 U.S. App. LEXIS 27181. The district court correctly held that the same was insufficient as there were "no facts or explanation beyond the recitation of the name of the tort" and such formulaic and naked assertions are insufficient to state a claim. *Id.* at *9-10. Similarly here, Plaintiffs make only bare assertions that the interception was done "for the purpose of committing a tortious act . . . namely, invasion of privacy" without factual allegations to support. ECF #31 at ¶185.

[18] As explained *supra*, while disclosure in violation of HIPAA has been found in *some* cases to be sufficient to permit an ECPA claim to go forward at this stage, Plaintiffs' claims do not implicate HIPAA. And in any event, Plaintiffs have not sufficiently alleged the purpose of the interception was to violate HIPAA and/or facilitate some alternative tortious or criminal act.

intention in intercepting communications was to commit some *other* crime or tort and/or to harm Plaintiffs by the alleged *disclosure*.[19] *Id.* As there are no allegations of fact to plausibly support such a criminal or tortious purpose here, this Court should not be persuaded that the crime-tort exception applies, *even if* Plaintiffs have sufficiently alleged violations of other common or statutory laws. *See Lakes*, 777 F. Supp. 3d at 1057 ("Plaintiffs cannot assert the crime-tort exception simply by arguing that Defendant's conduct was illegal or tortious.") (citing *Sussman*, 186 F.3d at 1202) ("focus is not upon whether the interception itself violated another law; it is upon whether the purpose of the interception—its intended use—was criminal or tortious"); *see also Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, *12 (pertinent question is not whether the defendant actually violated the law "but whether it intended to do so").

## VII. ALLEGATIONS DO NOT PLAUSIBLY SUPPORT WESCA CLAIM.

Plaintiffs contend that interception in violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") occurs at V.P.'s browser not where the signals were ultimately received by LifeLong. *See* ECF #31 at p. 31. Even accepting this as true, there are no allegations to support where V.P. was when she connected. While V.P. alleges she is currently a citizen of Pennsylvania, she does not allege that was the case in or around May of 2022 when she allegedly accessed LifeLong's website, and/or that she accessed the website from a browser based in Pennsylvania. *See* ECF #19 at ¶¶17-18. While the aforesaid deficiency might be remedied with an amendment, she cannot similarly overcome the prior consent exception, as explained next.

As pointed out in LifeLong's opening brief, per binding precedent from the Pennsylvania

[19] *See also Nienaber*, 2025 U.S. Dist. LEXIS 38654 at *37 (finding allegations of contemporaneous disclosure and interception precluded finding of an independent tortious or criminal use/purpose where disclosure was the alleged criminal/tortious purpose); *Okash*, 2024 U.S. Dist. LEXIS 53126 at *12 (finding allegations "encompass only the simultaneous interception and disclosure of information" and thus do not "allege independent criminal or tortious conduct").

Supreme Court,[20] the prior consent exception does not require "actual knowledge" but rather can be demonstrated if the person "should have known" about the interception. *Commonwealth v. Byrd*, 661, Pa. 85, 98 (2020). In response, V.P. contends that "the Complaint includes no allegations" to support that she was personally aware of the Tracking Tools at the time she visited LifeLong's website. ECF #31 at p. 32. The consent standard, however, is not premised on the subjective knowledge of V.P., but rather, the objective knowledge of a reasonably intelligent person. *Byrd*, 661 Pa. at 98-99. As previously argued, Plaintiffs have included an abundance of allegations in their Complaint regarding: (1) the "ubiquitous" and "monumental" surveillance of internet usage conducted by "[o]nline advertising giants" Google and Facebook, (2) those companies' public admissions that they collect information "from third party websites, such as Defendant's, to sell targeted advertising," (3) the "massive, targeted advertising enterprise" carried out by these companies via targeted ads sent to users' computers and smartphones, and (4) a majority of Americans being Google and Facebook users. *See e.g.*, ECF #19 at ¶¶3, 29, 31-33, 35, 38, 40, 57. Plaintiffs are bound by these factual assertions. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them."). The <u>only</u> reasonable inference from these allegations is that a reasonably intelligent person operating in today's internet age either knows or *should know* that when logged into their Google and Facebook accounts, as alleged here, their internet usage is under surveillance by Google and Facebook. Markedly, Plaintiffs do not address nor refute this argument, choosing instead to focus only on what the allegations say about V.P.'s subjective awareness. For this reason alone, the Court may dismiss the WESCA claim. *See Sohmer v. IRS*, 2018 U.S. Dist. LEXIS 225089, *13 (C.D. Cal. Oct. 5, 2018) ("When a plaintiff fails to

[20] *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) ("When interpreting state law, we are bound to follow the decisions of the state's highest court[.]") (internal quotation marks omitted).

address a defendant's argument as to why certain claims should be dismissed, courts may construe that failure as concession that they are valid reasons to dismiss those claims.") (internal quotation marks omitted).

Plaintiffs' feeble attempt to escape dismissal of V.P.'s WESCA claim by once again referencing LifeLong's privacy policy fairs no better. As explained ad nauseum,[21] V.P. neither alleges what the privacy policy stated at the time she herself visited the website nor that she read the policy before using the website. Moreover, the Amended Complaint, like the original Complaint, alleges even "conscientious" internet users do not read website privacy policies. ECF #19 at ¶44; ECF #1 at ¶44. Having alleged that even the most careful of users would not read the privacy policy, the privacy policy cannot serve by Plaintiffs' own allegations to rebut the objective understanding of a reasonable person as to Google and Facebook's surveillance here.

**VIII. CIPA CLAIM FAILS FOR SAME REASONS AS ECPA CLAIM.**

Plaintiffs concede that the alleged direct violation of the California Invasion of Privacy Act ("CIPA") rises and falls with the ECPA claim. *See* ECF #31 at p. 33-34. As explained *supra*, Plaintiffs have failed to plausibly allege that the crime-tort exception applies for purposes of overcoming the one-party consent rule. That failure similarly dooms the alleged direct CIPA violation.

As for the alleged aiding and abetting violation, dismissal is similarly warranted because, as previously argued, the information allegedly shared is considered record information not content.[22] In opposition to this argument, Plaintiffs place an emphasis on their allegations as to the sharing of buttons clicked by visitors to LifeLong's website. *See* ECF #31 at p. 29-30. Multiple courts,

---

[21] Both in LifeLong's original motion to dismiss and as part of this briefing. *See e.g.*, ECF #13 at p. 23-24, 43-44.

[22] This argument similarly applies to the ECPA claim and direct CIPA claim and may constitute an alternative basis for dismissing the ECPA claim and direct CIPA claim.

however, have held that "'button clicks'" are 'more akin to the record information that the Ninth Circuit has held not to be contents of a communications.'" *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 U.S. Dist. LEXIS 109123, *11-12 (E.D. Cal. June 9th) (quoting *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) (explaining that "mouse clicks" do not constitute "message content in the same way that the words of a text message or an email do" for purposes of CIPA).

Moreover, despite alleging "that the Tracking Tools inform Google and Facebook of a myriad of actions taken by users" **Plaintiffs do not themselves allege that they took these actions and had such information tracked/shared**. ECF #31 at p. 29. For example, they do not allege that they themselves clicked the button labeled "I'm Pregnant" for purposes of downloading the "Ultimate Adoption Guide" OR completed any Interest Form OR utilized the Family Finder application. Rather, they allege solely that they initiated a call to LifeLong through the website. *See* ECF #19 at ¶¶13, 18. As for what was shared from this interaction, the well-pled allegations support only that the tracking tools shared that a call was initiated by clicking the button labeled "Click to Call." *See id.* at ¶68.[23] That Plaintiffs placed a call to LifeLong is undisputedly record information as it does not divulge any contents of the call that was placed. *See In re Zynga Privacy Litig.*, 750 F.3d at 1107 (origination of a communication constitutes record information). This failure to plausibly allege that any "contents" were intercepted dooms not only E.H.'s CIPA claims, but also Plaintiffs' ECPA claim. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal.

[23] While Plaintiffs also allege the Tracking Tools transmitted that their call was "regarding an unplanned pregnancy" the very transmission data cited in support does not support said conclusory allegation. *See* ECF #19 at ¶68. Rather, said allegation appears to be premised on the call being placed from a LifeLong webpage and is thus, foreclosed by *In re Zynga* and *Smith*. *See In re Zynga Privacy Litig.*, 750 F.3d at 1108 (rejecting contention that website view at time of button click revealed contents of communication); *Smith*, 745 Fed. Appx. at 9 (describing "connection between a person's browsing history and his or her own state of health" as "too tenuous").

2020) (like the ECPA, under CIPA, plaintiff must identify contents, not record information as having been intercepted).

**CONCLUSION**

For the reasons argued herein and more fully in LifeLong's opening brief, Plaintiffs' First Amended Complaint should be dismissed in its entirety with prejudice.

Dated: September 19, 2025

**MESSER STRICKLER BURNETTE, LTD.**

*/s/ Luke K. Chamberlain*
Luke K. Chamberlain
Attorney for Defendant
LifeLong Adoptions, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 19, 2025, a true and correct copy of the foregoing **DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** was served electronically via the U.S. District Court CM/ECF system to counsel as set forth on the docket.

By: */s/ Luke K. Chamberlain*
Luke K. Chamberlain